## Celender et al., Appellants, *v.* Allegheny County Sanitary Authority.

Argued June 14, 1966. Before ERVIN, P. J.,
WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN,
and SPAULDING, JJ.

*James E. McLaughlin,* with him *John A. DeMay,*
for appellants.

*Robert S. Grigsby,* with him *Pringle, Bredin, Thomson, Rhodes & Grigsby,* for appellee.

OPINION BY MONTGOMERY, J., September 15, 1966:
Appellants-plaintiffs, employes of Mole Construction
Company, were severely burned as the result of an ex-

plosion in a sewage disposal tunnel being constructed by Mole under a contract with the Allegheny County Sanitary Authority. This tunnel construction included a large underground vault known as U-1, located adjacent to the Ohio River in McKees Rocks, Allegheny County. Plaintiffs sued the Authority alleging negligence in permitting explosive gas to accumulate in the vault and in failing to notify them of its presence. The Authority joined Mole as an additional defendant. In a jury trial the court below granted a nonsuit as to both original and additional defendants and later refused to remove it. Plaintiffs appealed.

Plaintiff Michael Celender, employed as a cement mason by Mole, and plaintiff John Diulus, employed as a laborer, reported for work on July 25, 1958, and were sent to a job location several miles away, on the other side of the river from the underground vault U-1. They were unable to work at the site to which they had been assigned this day because of a misunderstanding. They then proceeded in an automobile owned by Celender from that site to consult with their foreman concerning another job assignment, which foreman they expected to find near McKees Rocks. As they passed vault U-1, Celender recalled that he had left a rubbing stone inside that vault a few days before while he was working there. Celender, who was driving, stopped the car and sent Diulus down to look for the stone. Because the vault was dark Diulus could not readily find the stone. Celender then entered the vault and at his request Diulus struck a match. Immediately there was an explosion and flames raced around the chamber. Before they could escape both men were severely burned.

Plaintiffs admitted that on the day of the accident no one knew that they were going to enter this vault, but they and their witnesses stated that a warning was never given them concerning the possibility of ignit-

ing underground gas by smoking or by the use of open lights and that they had smoked while working therein. They testified, however, that they knew that there was likely to be gas in the tunnels and that they also knew that there were large gasoline and oil tanks located nearby.

The Authority was created to provide for the construction of a sewage system in Allegheny County which would treat and dispose of sewage rather than permit its drainage into the rivers in the area. The treatment plant was constructed on the north bank of the Ohio River near the McKees Rocks Bridge across from vault U-1. Various pipe lines conducted the flow of sewage to the plant after intercepting it at the river outlets of various existing sewers. At these interception points underground vaults including U-1 were constructed to provide access by workmen to the junctions. Numerous contractors participated in the project but U-1 vault was part of the contract (No. 28) awarded to Mole. At the time of the explosion this vault was 80 per cent complete but no work was being done on it at the time of the explosion. Vault U-1 was constructed on property owned by the Socony Mobil Oil Company under which the Authority had a perpetual easement. There was a fence around the area where this vault was located and there was a cap over the top of the opening leading underground.

A nonsuit should be entered only in a clear case. *Hader v. Coplay Cement Mfg. Co.,* 410 Pa. 139, 189 A. 2d 271 (1963); *DiGiannantonio v. Pittsburgh Railways Company,* 402 Pa. 27, 166 A. 2d 28 (1960), and on appeal from a compulsory nonsuit the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom, and all conflicts therein must be resolved in favor of the plaintiff. *Davies v. McDowell National Bank,* 407 Pa. 209, 180 A. 2d 21 (1962); *Idlette v. Tracey,* 407 Pa. 278, 180 A. 2d 37 (1962).

It is clear and undisputed that Mole was an independent contractor to whom and to his servants, a property owner, which the Authority was, owes only the duty of reasonable care to have the premises in a safe condition for work, unless the defects responsible for the injury were known to the contractor. *Engle v. Reider*, 366 Pa. 411, 77 A. 2d 621 (1951). Furthermore, the owner of the property is under no duty to protect the employes of an independent contractor from risks arising from or intimately connected with defects or hazards which the contractor has undertaken to repair or which are created by the job contracted. *Hader v. Coplay Cement Mfg. Co.*, supra; *Wetherill v. Showell, Fryer & Co., Inc.*, 264 Pa. 449, 107 A. 808 (1919).

Appellants' position is that the Authority was a participant in the work, having reserved control over part of it, and in support of their position they cite various provisions of the contract, i.e.: (1) B-35, which gave to the Authority engineer the right to order the contractor to erect safeguards and to take precautions deemed advisable by the engineer, "If, at any time, in the opinion of the engineer, the work is not . . . in all respects safe in respect to . . . persons on or about the work . . ." Also this section gives the Authority engineer the privilege of putting the work in such safe condition at the cost of the contractor, if it fails to do so promptly after being directed to do so; (2) B-11, which gives the Authority engineer the right to decide whether the contract is being properly fulfilled; (3) B-12, which gives to said engineer the right to approve the sequence of execution of the contract and the general conduct of the work or to direct the order or sequence where public necessity or welfare shall require; (4) B-13, which gives the Authority engineer the right to give orders and directions to the contractor's superintendent in the absence of the contractor; (5) B-20,

gives the Authority engineer the right to require the dismissal of any workman who, in the opinion of the Authority engineer, is incompetent or whose work is unsatisfactory; (6) C-33, provides for the type of lighting to be used in the shafts or tunnels and forbidding the use of open-flame lights unless expressly permitted. It is stated in appellants' brief that, "The most pertinent reservation of control is found in the area of safety. . . ."

Appellants argue that this question of reservation of control should have been left to the jury but we cannot accept this argument since this was a written contract free from ambiguity, the interpretation of which was for the court. *United Refining Company v. Jenkins,* 410 Pa. 126, 189 A. 2d 574 (1963); 8 P.L.E., Contracts, §148. Therefore the issue resolves itself into the question of whether such provision giving the Authority the right to observe the fulfillment of safety requirements with the right to order them fulfilled if the contractor did not do so, is such control of part of the work as intended by §414 of the Restatement 2d, Torts so as to impose liability on the Authority. We are of the opinion that they are not sufficient for that purpose. Throughout the provisions in the contract the obligation to secure safety is imposed on the contractor. It is only when it fails in the performance of its duty that the Authority is given the right to act. This case is similar in its facts to *Hader v. Coplay Cement Mfg. Co.,* supra, and we think, governed by it. Therein a compulsory nonsuit was sustained in an action by an employe of an independent contractor against the landowner although the owner was authorized to and did exercise supervisory powers over the work being done. Our interpretation of the contract in the instant case would bring this case within comment c under §414, Restatement 2d, Torts, which reads, "In order for the rule stated in this sec-

tion to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Mole had full authority in the performance of the work prescribed by the contract so long as it was done in a competent workmanlike manner and in accordance with the plans and specifications, and proper safety precautions were taken for the protection of persons on or about the work, which included representatives of the Authority.

Appellant's second argument is based on the regulations of the Pennsylvania Department of Labor and Industry prescribing safety safeguards to be taken in the construction of tunnels which particularly prohibit smoking and the use of unprotected lights. It is contended that there was a duty on the part of the Authority to enforce these regulations which it failed to do by neglecting to advise appellants about them. At the outset it is noted in the "Foreword" of the regulations that "These regulations shall be understood: . . . To place the responsibility for compliance with the rules upon the employer and employe; . . ." Nothing contained in them places any responsibility on the person for whom the work is being done by an independent contractor. Since responsibility for compliance was on the employes, equally with their employer, it is difficult to accept their argument that they should expect someone else to be responsible for their own

failure or dereliction. We fail to find any statutory or regulatory duty imposed on the Authority to comply with the Department regulations or to see that they are fulfilled.

Since the record is clear that Mole was an independent contractor and had in fact created and was fully advised of the hazard present in the vicinity of U-1 vault, and we have concluded that the Authority did not reserve control over any part of the work, this disposes of the appeal and the order of the lower court granting a compulsory nonsuit will be affirmed. The nonsuit being proper as to the Authority the suit also falls against Mole since appellants' claim against it would be limited to Workmen's Compensation.

There are other matters argued by appellees as additional reasons for the nonsuit which we purposely refrain from deciding in view of our conclusion previously expressed. They relate to the absence of evidence to establish the cause of the explosion or to establish the alleged negligence, the contributory negligence of the appellants, and their status as licensees or trespassers or as employes of the Authority as a statutory employer.

Orders affirmed.