Wilma A. MOUSHEY, Administratrix of the Estate of Charles T. Heiser, Deceased, Appellant,

v.

UNITED STATES STEEL CORPORATION, (Defendant and Third-Party Plaintiff),

v.

MOSITES CONSTRUCTION COMPANY, (Third-Party Defendant).

Wilma A. MOUSHEY, Administratrix of the Estate of Charles T. Heiser, Deceased, Appellant,

v.

S. T. MOSITES and Anthony Sforza.

Nos. 15879, 15880.

United States Court of Appeals Third Circuit.

Argued Nov. 4, 1966.

Decided March 6, 1967.

Rehearing Denied April 18, 1967.

562

Hymen Schlesinger, Pittsburgh, Pa., for appellant.

Chauncey Pruger, Pittsburgh, Pa. Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for U. S. Steel Corp.

John David Rhodes, Pittsburgh, Pa. (Pringle, Bredin, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., on the brief), for Mosites Const. Co. and S. T. Mosites.

Before GANEY, SMITH and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

This matter concerns civil action No. 63,380 in which Wilma A. Moushey, Administratrix of the Estate of Charles T. Heiser, deceased, brought suit against the United States Steel Corporation as defendant who, in turn, brought on the record Mosites Construction Company as a third-party defendant, and civil action No. 64–275 wherein Wilma A. Moushey, Administratrix of the Estate of Charles T. Heiser, deceased, brought suit against S. T. Mosites and Anthony Sforza, defendants.

The cases were consolidated for trial and this appeal is taken from the judgments entered in favor of the defendants upon a verdict of the jury answering special interrogatories. The trial judge dismissed the action against Sforza after the plaintiff had rested her case and no question is raised in this appeal challenging such dismissal. This appeal is taken by the plaintiff from judgments entered in favor of the defendants upon the verdict of the jury, as indicated.

Briefly, the following facts concern the cause of action: Charles T. Heiser met his death on April 2, 1963, when he fell from the roof of the Electric Furnace Building owned by the United States Steel Corporation at Duquesne, Pennsylvania, where he was an employee of Mosites Construction Co., the third-party defendant, of which Steven Mosites was president, and who, as indicated above, was named as a defendant in a separate suit. The Mosites Construction Company was engaged in painting the roof over certain electrical furnaces under a contract entered into between it and the defendant, United States Steel Corporation. Pertinent sections to the issues here raised are listed in the footnote below.[1] Heiser was working on an open roof approximately 80 feet above the ground which had a slope of more than 20 degrees, slightly more than 3 inches per horizontal foot. He was engaged in helping to spray paint on the roof as he had excellent qualifications for working on roofs and he liked climbing and being able to stay in high places. He was in good health with all of his faculties, physical and mental, being normal on the day of the accident, April 2, 1963. The time of the accident was about one o'clock in the afternoon. Heiser, the decedent, one Burrell and Anthony Sforza, the foreman, or supervisor, in charge of the men, had been engaged in pulling up material from the ground and had their hoses connected to a pump attached to a drum, which was to supply the necessary material for spraying. Sforza stationed Heiser by the drum which contained the material that would

1. Sections 16 and 4 of the contract between United States Steel Corporation and Mosites Construction Company read as follows:

"16. *The safety of all persons employed by Contractor and his subcontractors on Owner's premises, or any other person who enters upon* Owner's premises for reasons relating to this contract, *shall be the sole responsibility* of Contractor. Contractor shall at all times maintain good order among his employees and shall not employ on the work any unfit person or anyone not skilled in the work assigned to him. * * *

"Contractor shall take all reasonable measures and precautions at all times to prevent injuries to or death of any of his employees or any other person who enters upon Owner's premises. Such measures and precautions shall include, but shall not be limited to, all safeguards and warnings necessary to protect workmen and others against any conditions on Owner's premises which could be dangerous. * * *"

"4. If Contractor, at any time in the judgment of Owner's designated engineer, shall * * * fail in the performance of any of his obligations hereunder, and shall, within three days after receipt of written notice from Owner fail to remedy any such default. * * * Owner may, in any event, either terminate this contract or may exclude Contractor and his employees, subcontractors and agents from the work without terminating this contract. * * *"

be pumped out to be sprayed on the roof. Sforza put his safety belt on him and started to spray. The safety belt which he put around himself had a rope leading from it, 6 to 8 feet long, and about ½ inch thick, which was connected to a guideline which ran up and was fastened to certain ventilators on the edge of the roof. For one reason or another, the material did not come out of the spray gun fast enough and Sforza called for the decedent, Heiser, to make certain adjustments on the pump, which he attempted to do. Sforza again tried the spray gun and the same trouble persisted so he called the decedent back again and told him to bring his safety belt with him. Sforza told him to stand by, leaving his safety belt beside him, handed him the spray gun and went over to see if he could make the proper adjustment and, as Sforza went over to the other side of the roof, he turned around and yelled to Heiser to watch the paint and watch himself and stay put, and to keep the trigger of the spray gun up to see if the material would come out better, which was mastic paint and slippery. Sforza adjusted the gauges on the pump and when he came back over the roof he looked down and saw that the decedent was no longer there and he went below and saw the decedent lying beside the railroad track. When Heiser came over to Sforza, Sforza placed his safety belt right beside where the decedent was sitting. There was some evidence that when Sforza left, the decedent was trying to put on his safety belt. Heiser was taken to the hospital and there pronounced dead by the doctors who examined him.

The safety belts were the type used by window cleaners with a buckle in the front, with over 3 inch leather straps, and at each side of the belt there were steel rings and on one of these rings there was six feet of rope at the end of which was a clip which was fastened on to the safety line stretching from the top of the roof.

On March 22, 1963, Steven Mosites, president of the Mosites Construction Company, was present in the offices of the United States Steel Corporation with certain members of the Corporation, when a booklet was given to Mosites covering the contractor's safety responsibilities in connection with general employment in the United States Steel Corporation. At that meeting, certain safety factors were discussed, including the placing of signs on the ground to indicate that there was work being done overhead; that the men employed by Mosites were to use extreme caution on the roof and were to walk only on purlins and structural steel, and the request was made that the men in the employ of Mosites Construction Company use safety belts during the spraying as a precaution for their safety. The defendant, United States Steel Corporation, employed two inspectors, one of whom, Hlad, the inspector in charge on the second day of work, which was the day the decedent met his death, warned the two men on the roof, one of which was the decedent, Heiser, that they should wear their belts and take care of themselves.

The liability asserted against the defendant steel company was that the company had directed the contractor's employees in a particular manner, that of using safety precautions, by way of requiring that safety belts be used and that the inspector, Hlad, had insisted that while the men were on the roof they should wear the belts and take care of themselves, which, it is contended, was in reality the exercise of control of the operation.

In support of this contention, the plaintiff called one Anthony Rainaldi as an expert on safety regulations pertaining to painting of roofs in industrial establishments and he testified that the use of safety belts alone was not the usual and customary manner in which work of this type should be done for the reason that if you wanted to get to a point beyond the perimeter of the line, it would have to be removed as the line would not be long enough to permit one to get there and it would then have to be changed to another position, since, from time to time, men could not work freely from

the belt. That the measures commonly used in the painting of a roof, in addition to the use of a safety belt, was the placing of a heavy line around the extreme perimeter of the building or of the roof to keep anyone working on the roof from falling, and another suggestion would be a catch-all, by way of a swing scaffold, attached to the building but used at the edge of the roof so that if an object with which the men were working would fall, or if the man himself would fall, it would act as a catch-all and avoid the fall. He also suggested the use of catwalks. He further testified that these additional procedures would apply to the very kind of roof here in issue. In other words, he stated the methods he described were of common usage in the industry and that the use of safety belts alone was not enough. Rainaldi summed up his position: "I am not criticizing the belt or the use of the belt. I say it's wonderful. But the fact that that belt has to be taken off from time to time by the men working, to move—he may want to get over here and that line will not permit him to get there, so it's just customary to take and unhook it, and you are on your own." It is for this reason that he said additional standards were to be required.

Steven Mosites testified on behalf of the Mosites Construction Company, third-party defendant, and he was equally emphatic in stating that the use of safety belts, as here, was the customary and usual practice in this type of work. Thus, the issue was drawn for the jury.

In determining liability, the court prepared forms for the use of the jury by stating 3 questions for their determination:

"1. Was there any negligence on the part of Steven Mosites which caused the death of Charles Heiser on April 2, 1963?"

"2. Was there any negligence on the part of Mosites Construction Company which caused the death of Charles Heiser on April 2, 1963?"

"3. Was there any negligence on the part of United States Steel Corpora-

tion, its agents, servants or employees which caused the death of Charles Heiser on April 2, 1963?"

As to the first question, the court stated in its charge that there was no dispute but that the Mosites Construction Company had delegated to Steven Mosites certain duties with respect to the safeguards and precautionary measures to be taken, as well as the overall supervision of the job, and that if the jury found negligence in this respect, it having been the duty of Steven Mosites to act for the Company, then there could be attributed to him, as well as to the Mosites Construction Company, a violation of its duty to its employees. The court further instructed the jury that if it decided the first 2 questions in the negative, it need not proceed further to the consideration of the third question, which concerned itself with the liability of the United States Steel Corporation, because it (the jury) would then have found that the methods employed in the performance of the work were customary and usual, in that safeguards, by way of safety belts, were provided and in such a case the evidence would not support a finding of negligence on the part of any defendant. In other words, that to answer the third question would be a superfluous response, as the duties owed to the decedent by the defendant, United States Steel Corporation, were, under the circumstances of the case, no greater than the duties owed him by his employer, Mosites Construction Company.

This approach, we suggest, was misleading and the charge to the jury in connection therewith was error.

The first pertinent question to be resolved here is whether the defendant, United States Steel Corporation, was negligent, and not whether Steven Mosites or the Mosites Construction Company was negligent, for Mosites Construction Company was not sued directly and, accordingly, if the defendant, United States Steel Corporation, was not negligent, it is hornbook law that the Mosites Construction Company was, there-

fore, not liable, and the case as to this action, No. 15,879, would be ended. If the defendant, United States Steel Corporation, was found negligent, its recourse against the Mosites Construction Company, the third-party defendant, is by way of contribution as a joint tort feasor and, accordingly, the jury should have been instructed as to what standard of care is imposed on a landlord with respect to an employee of an independent contractor, a business invitee.

█ The responsibility of an owner of premises is clearly set out in Valles v. Peoples-Pittsburgh Trust Company, 339 Pa. 33, at pp. 39–40, 13 A.2d 19, at p. 23. This standard is set out as follows: "* * * *His [*the owner of the land*] *responsibility to an independent contractor's employes while performing the contract on his premises is not the same as his responsibility to his own employes.* The subject was recently considered in an opinion by Simpson, J., from which the following is pertinent: 'An owner of a building owes no statutory duty to the employee of a contractor, in order to guard against injury to the employee, to instruct him as to the dangers of the employment, or to give him a reasonably safe place in which to work. While the owner in such a case is required to use reasonable care to guard the employees against injury, he will not be liable where causes of the injury intervened which he neither did nor could expect: Rugart v. Keebler-Weyl Baking Co., 277 Pa. 408, 121 A. 198.' " (Emphasis ours.)

Also see Kulka v. Nemirovsky, 314 Pa. 134, 170 A. 261: "An occupier of premises owes to business invitees the affirmative duty of [exercising reasonable care in] keeping his premises reasonably safe, and ·of giving warning of any failure to maintain them in that condition."

In Celender v. Allegheny County Sanitary Authority, 208 Pa.Super. 390, at 394, 222 A.2d 461, at page 463, the court stated: "Furthermore, the owner of the property is under no duty to protect the employees of an independent contractor from risks arising from or intimately connected with defects or hazards which the contractor has undertaken to repair or which are created by the job contractor. Hader v. Coplay Cement Mfg. Co., 410 Pa. 139, 189 A.2d 271; Wetherill v. Showell, Fryer & Co., Inc., 264 Pa. 449, 107 A. 808."

However, a slightly different factual circumstance intrudes here as there is testimony, as indicated previously, that defendant, United States Steel Corporation, asked the employees of Mosites Construction Company, third-party defendant, to use safety belts and Steven Mosites testified it was his "understanding that the men were to use safety belt lines and no other safety precautions on the roof." Other than advising the employees of Mosites Construction Company to use safety belts in the performance of the work for which they had contracted, the record is silent as to any intervention by the defendant company with respect to the operative manner in which the painting of the roof was to be done. Did these instructions amount to such control over the work by the defendant as to make the plaintiff-decedent an employee of the defendant? If so, would not his right of action be governed by the Pennsylvania Workmen's Compensation Act?[2] The court did leave this question of control to the jury, but no

2. Section 104 of the Pennsylvania Workmen's Compensation Act, Purdon's Pa. Stat.Ann., 1952, Tit. 77, § 22, Cum.Supp., provides:
"The term 'employe,' as used in this act is declared to be synonymous with servant, and includes—
"All natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and

not in the regular course of the business of the employer, and exclusive of persons to whom articles or materials are given out to be made up, cleaned, washed, altered, ornamented, finished or repaired, or adapted for sale in the worker's own home, or on other premises, not under the control or management of the employer. Every executive officer of a corporation elected or appointed in accordance with the charter

verdict was ever rendered directly to the defendant, United States Steel Corporation, since in the first two of the special interrogatories posed to the jury, it answered "No"—whether Steven Mosites or Mosites Construction Company was negligent—and the court instructed it, in that instance, that it need not decide defendant's guilt, stating that if they were found not liable for negligence, the defendant, United States Steel Corporation, could not be found so either. Thus the jury was given no opportunity to test the guilt of the defendant except by their determination of the guilt of Mosites Construction Company and the standard given it to judge Mosites Construction Company was in error.

In its charge, the court stated:

"In determining whether or not the United States Steel Corporation and Mosites Construction Company, their agents, servants or employees, used due care and prudence and circumspection, it is your duty to take into consideration all the circumstances then and there existing, which would have influenced the conduct of an ordinarily prudent person in the same situation. In this respect, you fix the standard for reasonably prudent and cautious men, under all the circumstances of the case as you find them, and then test the conduct involved and try it by that standard."

Later, in its charge, the court stated:

"In determining what is reasonable care, you may consider what is customary in the trade, where and when work of this kind is performed. If you find that the usual, customary standard of care in the industry was used in this case by Mosites Construction Company, your verdict must be in favor of both Mosites Construction Company and the United States Steel Corporation, for the simple reason that in such case there would not be negligence on the part of either, and therefore no liability."

■ Thus it can be seen that in one place in its charge the court stated the standard to be "the conduct of an ordinarily prudent person in the same situation." and yet, finally, it stated that if the "usual, customary standard of care in the industry was used" by Mosites Construction Company and Steven Mosites, individually, the jury's verdict must be in favor of it and the United States Steel Corporation. As has been indicated, the jury answered the first 2 questions in the negative and, pursuant to the instructions from the court, did not answer the third interrogatory posed them.

■ The standard laid down by the court in its charge for the jury's determination under the questions submitted to it was an incorrect one. The correct rule of law is that while the customary and usual practice in the industry is evidence to be considered by a jury along with all the other evidence in the case, it does not furnish a conclusive test on the question of negligence. Ramsey v. Mellon National Bank & Trust Co., D.C., 251 F.Supp. 646, 649, quoting Donnelly v. Fred Whittaker Co., et al., 364 Pa. 387, 72 A.2d 61. See also Diehl v. Fidelity Philadelphia Trust Co., 159 Pa.Super. 513, 49 A.2d 190; Maize v. Atlantic Refining Co., 352 Pa. 51, 41 A.2d 850, 160 A.L.R. 449; Hudson v. Grace et al., 348 Pa. 175, 34 A.2d 498, 150 A.L.R. 366. Mr. Justice Holmes, speaking in Texas and Pacific Railway Company v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 623, 47 L.Ed. 905, said: " * * * What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." See Hudson v. Grace, supra, 348 Pa. at p. 181, 34 A.2d 498. In MacDougall v. Penna. Power & Light Co., 311 Pa. 387, at p. 396, 166 A. 589, at p. 592, it was stated: " * * * Usage becomes important only when the conduct in question is not inherently dangerous. Vigilance must always be commensurate

and by-laws of the corporation, except elected officers of the Commonwealth or

any of its political subdivisions, shall be an employe of the corporation."

with danger. A high degree of danger always calls for a high degree of care. The care to be exercised in a particular case must always be proportionate to the seriousness of the consequences which are reasonably to be anticipated as a result of the conduct in question. Reason does not have to wait on usage; the latter must wait on reason. * * * Customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence, or fix a standard by which negligence is to be gauged. The standard of due care is such care as a prudent person would exercise under the circumstances of the particular case, and conformity to customary or usual conduct or methods cannot amount to more than a circumstance to be considered together with other circumstances of the case in determining whether due care has been exercised: 45 C.J., page 707, § 87. 'The common usage of the business is a test of negligence, but not a conclusive or controlling test': Cadillac Motor Car Co. v. Johnson, 2 Cir., 221 F. 801."

To the same effect is Hemrock v. Peoples Natural Gas Company, 423 Pa. 259, at pp. 269–270, 223 A.2d 687, 692, where the court spoke as follows: "Then the defendant argues that, once it has done what is customarily done in a given situation, it may dust its hands of all responsibility. What is usually done is not always the criterion of what should be done. * * * 'A high degree of danger always calls for a high degree of care.' " The rule here in point was well crystallized in the statement by the court in Price v. New Castle Refractories Co., 332 Pa. 507, 512, 3 A.2d 418. "While custom or practice prevailing in a particular business in the use of methods, machinery and appliances is a most important factor in determining the question of negligence, ultimately it is for the jury to find whether under all the evidence—particularly where, as in the present case, it consists of oral testimony—the defendant was negligent."

This was undoubtedly dangerous employment for the paint which was sprayed on the roof was mastic which, in itself, is a very slippery solution and the paint was to be applied to a roof which, as has been indicated, had a pitch of a little over 20 degrees.

■■ Likewise, the question of the reservation of control was one for the court since this was a written contract and free from ambiguity. United Refining Company v. Jenkins, 410 Pa. 126, 189 A.2d 574. Also, the right to observe the fulfillment of the safety requirements with the right to order them fulfilled if the contractor did not do so in the contract is not such control of part of the work as intended by § 414 of the Restatement 2d, Torts, so as to impose liability on the defendant. Section 414 Restatement 2d, Torts, under comment c, reads as follows: "In order for the rule stated in this section to apply, the employer must have retained at least some degree of control over the manner in which the work was done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, as to operative details. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Celender v. Allegheny County Sanitary Authority, supra, 208 Pa.Super. at pp. 395–396, 222 A.2d at p. 464.

In action No. 15,880 by the Administratrix of the Estate of Charles T. Heiser, deceased, against Steven Mosites, individually, and Anthony Sforza, individually, the case was dismissed and not appealed. As to the remaining defendant, Steven Mosites, individually, while the plaintiff, Administrator of the Estate of Charles T. Heiser, deceased, may maintain the action against Steven Mosites, his foreman and fellow workmen, Repyneck v. Tarantino, 415 Pa. 92, 93–

94, 202 A.2d 105, the charge of the court is equally applicable to him, as well as to the United States Steel Corporation and Mosites Construction Company in action No. 15,879, and was erroneous as regards the standard of care it adopted and, therefore, the judgment of the lower court will be reversed and the court below is ordered to grant appellant's motions for a new trial in each action.