**Adeline E. WAGNER, Administratrix of the Estate of Charles A. Grove, Deceased, Plaintiff,**

v.

**Robert T. GRANNIS, Sarah Grannis, Venango Federal Savings and Loan Association, J. Bernard Klapec and Andrew Sabol, Individually, and doing business as Klapec & Sabol, and Edward W. Koerber, Defendants.**

Civ. A. No. 86–65.

United States District Court
W. D. Pennsylvania.

July 25, 1968.

Allan H. Cohen, of Gatz, Cohen & O'Brien, Pittsburgh, Pa., for plaintiff.

Will J. Schaaf, Erie, Pa., for defendant Grannis.

John G. Gent, Erie, Pa., for defendant Klapec & Sabol.

John A. Blackmore, Erie, Pa., for defendant Koerber.

Richard H. Scobell, Erie, Pa., for defendant Venango.

## OPINION

WEBER, District Judge.

This is a diversity negligence action for wrongful death under Pennsylvania law. Its difficulties arise out of an attempt to impose liabilities on third parties for the death of a workman where statutory liability has been placed upon the employer regardless of negligence on his part. The awards under such compensation acts are often considered inadequate, and less than can be realized in a suit based upon negligence tried before a jury. The beneficiaries of the deceased plaintiff risk nothing, because they are entitled to the statutory award; the employer or his insurance carrier is frequently a highly interested party because he may benefit from his subrogation rights to recover what he has been required to pay; and the counsel for the workman or his beneficiary is entitled to his fee by statute for any recovery that he has achieved on behalf of the employer, regardless of the extent to which his client has been benefited. The excess recovery over the compensation paid, goes to the employee or his beneficiaries. [77 P.S. § 671]. All this leads to highly complex theories of liability to hold third parties responsible, and frequently great confusion to the jury, which cannot be told and which is often unable to understand why a party shown by the evidence before them to be guilty of negligence which proximately caused the accident, is not before them. In the Federal Courts such employer is frequently joined as a third party defendant to protect rights of contribution or indemnity which the defendants may try to assert, although his liabiltiy has been fixed, determined and limited to that imposed by the Pennsylvania Workmen's Compensation Act. In this case, the employer, whose negligence was apparent, was not joined as a third party defendant, making the task of the jury more difficult.

The case arises from the collapse of a wall of a building in which a workman was killed. Plaintiff named as defendants Venango Federal Savings and Loan Association (herein called Venango), the owner of the site upon which the employer of the plaintiff's decedent was erecting a building; the owner of the adjoining building whose wall collapsed (herein identified collectively as Grannis); the architect employed by the owner of the construction site (Koerber); and a demolition contractor who had previously demolished the part of the former building on the construction site (Klapec and Sabol). The demolition contractor was exonerated by the verdict of the jury, which found liability against Venango, Grannis and Koerber. The decedent's employer, Bank Building and Equipment Corporation (herein called Bank Building) was not made a party to this action.

Liability is asserted against each defendant under a complex set of relationships between them.

An old building, known as the Exchange Hotel, stood at the intersection of Liberty and 13th Streets in Franklin, Pennsylvania. It was for sale. Robert Grannis, a lawyer, was interested in purchasing it but he didn't need the whole building. (For the purposes of this Opinion we will treat Grannis as one party under that name, although Mrs. Sarah Grannis became the owner of title and Robert Grannis, her husband, acted as her agent). Robert Grannis was also attorney for Venango in many of the transactions relevant herein. Venango became interested in a part of the building as a site for a new bank building which they were planning. Venango had engaged Bank Building as consultants in the planning, design and construction of the new building. Venango and Grannis came to an agreement to purchase the entire Exchange Hotel property, dividing it between them at a line marked by an interior masonry and brick partition wall. The decision to divide the property at this partition wall was made after consultation with and advice by Bank Building and the architect, Koerber, who had been engaged by Venango at the

recommendation of Bank Building to prepare the plans for the new building.

The two sections of the Exchange Hotel were conveyed to Grannis and Venango, and Venango proceeded with the demolition of that portion of the building on its property adjoining the wall, which now became the exterior boundary wall of the Grannis property. Venango hired Klapec and Sabol by separate contract to demolish its part of the old building and clear away the site. The site was cleared down as far as the level of the basement of the old building. Klapec and Sabol then left the site. Some months later Bank Building entered upon the cleared site to begin construction of Venango's new building according to Koerber's plans. Although Koerber, under his contract with Venango, was responsible for design and general supervision, Venango did not contract with him for on-the-site supervision, thus failing to exercise an option in the architectural contract. Bank Building hired Grove, plaintiff's decedent, as a carpenter. Bank Building began to excavate for footers for the new building, which excavations extended below the floor level of the former building and below the foundation level of Grannis' adjoining wall. Bank Building sent Grannis a letter early in June 1965 telling him that they were beginning the work and would proceed with a minimum of disturbance to adjoining property, but not saying that they would actually invade the property line. It was intended that the adjoining wall of the new building of Venango would be a few inches away from Grannis' existing wall. On June 25, 1965, a Friday, Grannis was informed by a passer-by that Bank Building workmen were cutting a hole under the wall of his building. He then observed the excavation and saw that the workmen had made a cut into the earth under the stone footers of his wall about 18 inches deep and about 6–7 feet wide. Grannis went to Venango and inquired of one of its officers as to what was being done.

This officer called Bank Building's superintendent and was assured that this was the proper procedure and was in accordance with the architect's plans, which called for the pouring of a concrete footer for the new Venango building which would also be a partial support for Grannis' adjoining wall. This assurance was conveyed to Grannis. On Monday, June 28, while Grannis was sitting in his office in the old building, the partition wall collapsed, killing Grove and heavily damaging Grannis' building.

The decedent, Grove, was preparing the forms for pouring the concrete footers. His remark to a co-worker indicated that he was aware of the danger in the procedure being undertaken, but that he was proceeding according to orders.

We are not here concerned with the weight or credibility of the evidence. These were matters for the jury. The question becomes one of whether there is evidence to support a finding of liability on the owners of these adjoining sites, and the architect, independent of the work that the contractor was doing. To determine that we shall examine the evidence as it applies to each defendant.

We have before us motions of each defendant found liable for new trial and for judgment n. o. v. We have also a motion for new trial by plaintiff limited to the issue of damages on the grounds that damages were inadequate, and a motion for new trial by plaintiff against defendants Klapec and Sabol.

## DEFENDANT GRANNIS MOTION FOR JUDGMENT N.O.V.

Defendant Grannis opposes liability assessed to him on the grounds that he has no duty to the employee of an independent contractor who comes upon the property adjoining his, at the invitation of its owner, either to remedy a defect which the owner has discovered or in the ordinary process of performing work in the progress of which he was injured. Celender v. Allegheny County Sanitary Authority, 208 Pa.Super. 390, 222 A.2d 461 [1966]; Peter v. Public Constructors, Inc., 368 F.2d 111 [3d Cir., 1966].

Taking all the evidence and the inferences derived therefrom in the light most favorable to the plaintiff, we find:

1. Grannis participated in the agreement to divide the old hotel building at the point of an interior wall, as a result of which the old interior wall became the exterior wall of his building.

2. Grannis maintained the remaining portion of the old building on his premises with an exterior wall which was unsafe to persons outside the premises from the moment of the demolition.

3. Grannis took no action to determine whether the exterior wall remaining on his property was safe.

4. Grannis took no action to strengthen, support or buttress the wall, either from the outside or from the inside.

5. Grannis left the old interior wall standing subject to exposure from the elements for several months during which its structure was deteriorating.

6. The workman who was killed was not an employee of Grannis, nor an employee of any contractor hired by Grannis to enter upon his property to correct any hazard connected with the wall or to do any work for Grannis in connection with the wall.

With respect to Grannis, plaintiff's decedent and his contractor were not connected with the demolition of the old building and the peril arising from the dangerously defective wall left standing on the Grannis property. This is an exception to the non-liability of the owner to employees of a contractor that was specifically pointed out in Harrison v. Blueberry Hill, 255 F.2d 730, 733–734; [3d Cir., 1958]:

> "In the instant case, plaintiff and Key, his employer, were not connected in any way with the installation or inspection of the casement window which allegedly caused the injury."

Other cases cited by Grannis all refer to employees of the *owner's contractor*. There was no such relationship here between Grannis and Grove, the plaintiff's decedent.

Sword, Houston Fire & Cas. Ins. Co., Intervenor v. Gulf Oil Corporation, 251 F.2d 829 [5th Cir., 1958], involved the employee of a contractor with the owner. The Court found that the owner surrendered his control of the premises to the contractor, and is thus not liable.

Peter v. Public Constructors Inc., supra, involved non-liability of a general contractor for the death of the employee of a subcontractor on a bridge demolition job because the general contractor had reserved no right of control over the subcontractor's work.

Eastman Kodak Company v. Martin, 362 F.2d 684 [5th Cir., 1966], again involves non-liability of an owner to an independent contractor's employee who was brought on the premises of the owner to correct the very condition which caused the injury.

We have examined in detail the remaining cases cited by Grannis in support of his argument for non-liability as a matter of law. We do not dispute their general authority with respect to employers of contractors (owners) on the owner's property. Chapter 15 of the Restatement of Torts, 2nd, §§ 409–429, treats the subject "Employers of Contractors". Grannis was not the employer of a contractor. He is the owner of land. His liability is based upon Chapter 13 of the Restatement, Torts 2nd, §§ 328–387, and particularly under Topic 5 thereof, "Liability of Possessors to Persons Outside the Land". § 364 thereof was read verbatim and explained to the jury.

§ 364 is the law of Pennsylvania, McCarthy v. Ference, 358 Pa. 485, 58 A.2d 49, 53 [1948]. § 364 applies to this case under the plaintiff's evidence and the finding of the jury:

(a) There was a structure on Grannis's land which the owner should realize involved an unreasonable risk of harm to someone outside.

(b) Grannis agreed to and participated in the condition by his agreement to sever the building at this point and leave the former interior partition wall

standing, unsupported, unbraced, untied and exposed to the weather.

There is no question under this evidence of the condition being created without Grannis' consent, which would require reasonable care after he knows or should know of it. Did Grannis realize or should he have realized that the wall involved an unreasonable risk of harm? In Pope v. Reading Company, 304 Pa. 326, 156 A. 106, 109 [1931], the court held:

"A person in possession or control of a high stone wall at a place where others have a right to be is under obligation to have the wall inspected at reasonable intervals, and is chargeable with knowledge of its condition, unless its condition has suddenly changed and he has had no time in which to acquaint himself with this change."

There is no evidence that Grannis by himself or by some competent person acting for him had this inspection made. There is evidence that such an inspection, before the contractor next door entered upon the premises and began his work, would have revealed a dangerous condition. Grannis has a non-delegable duty to use reasonable care. The jury verdict is supported by evidence that he failed to use such care. In such case, involving a wall collapse, the Supreme Court of Pennsylvania, held:

"Defendant was charged with a nondelegable duty to use ordinary care to make her property reasonably safe. If her witnesses had been given full credit by the jury, a finding that she had satisfied the law's demand would have been sustained; but it was for the jury to decide. The jury found the wall to be defective, and unsafe to remain standing without being properly braced or guarded. In so finding it decided that defendant had not performed her obligation of ordinary care under the circumstances, that those employed by her, either through lack of proper inspection, incompetency or misjudgment, failed to ascertain the true condition of the wall, as described by plaintiff's witnesses. This very important dispute in the evidence was submitted under proper instructions from the court." Fitzpatrick v. Penfield, 267 Pa. 564, 109 A. 653, 655 [1920].

An important distinction in the *Fitzpatrick* case is that the defendant did produce evidence of inspection and is charged nevertheless because of what a proper inspection would have revealed. Grannis made no inspection, and plaintiff produced evidence of what such an inspection would have revealed.

Grannis argues that he did all that could reasonably be required of him when he found the Bank Building employees cutting under his foundation wall in June 1965. This argument ignores evidence of the prior dangerous condition of the wall, which Grannis created or which was created with his cooperation and consent. The Defendant, Grannis' motion for Judgment N.O.V. will be denied.

## DEFENDANT VENANGO'S MOTION FOR JUDGMENT N.O.V.

The liability of Venango can only be sustained on evidence which supports some exception to the rule of non-liability of an owner of land to the employees of an independent contractor invited on the premises to do work for the owner. Ordinarily, such liability is not imposed on the owner.

"An owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor * * * [citations omitted * * *]. An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises * * *

[citations omitted * * *]. Hader v. Coplay Cement Mfg. Co., 410 Pa. 139, 189 A.2d 271 at p. 277 [1963].

One readily recognized exception to this rule is set forth in Restatement, Torts 2d, "Employers of Contractors", § 414:

> "Negligence in Exercising Control Retained by Employer * * *
>
> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

What does this "retaining of control" consist of? The Restatement Comments to § 414 say it is not the general right to order the work stopped or resumed, to inspect its progress, to receive reports or to make suggestions or recommendations which need not necessarily be followed. It must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

In Celender v. Allegheny County Sanitary Authority, 208 Pa.Super. 390, 222 A.2d 461 [1966], the court considered the extent of evidence of retention of control, and found it insufficient as a matter of law to submit to the jury, because all of the elements of control relied upon by the plaintiff were incorporated into the contract between the owner and the contractor. The Court held that this was a written contract free from ambiguity, the interpretation of which was for the court.

However, in the instant case, there were matters outside the contract between Venango and Bank Builders. The entire demolition of the part of the old hotel building was taken away from Bank Building and awarded by Venango to another contractor. Venango made an agreement with Grannis to cut the wall at this point, Bank Building assenting; but Bank Building had no control over the manner in which this work was to be done. Plaintiff's evidence points to the very decision to leave the wall of the old hotel building standing unbraced and unsupported, as the proximate cause of the wall's collapse and Grove's death. This was not under Bank Building's control.

A second evidentiary element in support of plaintiff's argument of retention of control by Venango is the independent contract of Venango with Koerber, the architect. Venango did not exercise the option under the architectural contract of engaging him or any other party to provide "more extensive representation on the site." Thus Venango retained the right to exercise on-site architectural supervsion.

The Court considered these evidentiary elements of reservation of control sufficient to submit this question to the jury, under § 414 of the Restatement.

A second recognized exception to the rule of non-liability of the owner when the work is committed to an independent contractor is contained in §§ 416 and 427 of the Restatement. These have been adopted as the law of Pennsylvania in Philadelphia Electric Co. v. James Julian, Inc., 425 Pa. 217, 228 A.2d 669 [1967]. We will treat these two Restatement rules as in *pari materia;* Comment (a) to § 416 says:

> "The two rules represent different forms of statement of the same general rule, that the employer remains liable for injuries resulting from dangers which he should contemplate at the time that he enters into the contract, and cannot shift to the contractor the responsibility for such dangers, or for taking precautions against them."

§ 416 contemplates:

> " * * * work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken * * * "

§ 427 contemplates:

> " * * * work involving a special danger to others which the employer

knows or has reason to know to be inherent in or normal to the work * * * "

We must first consider the requirement of notice. Both defendants, Grannis and Venango, argue that they had no actual notice of the unsafe condition of the wall after the demolition. But here, in the case of Venango as well as of Grannis, the condition was created by the joint decision of Grannis and Venango to cut the building at the point selected, and leave the former interior wall standing as an exterior supporting wall.

Notice of a defective condition is not required when the party otherwise entitled to notice has himself created the defective condition. 65 C.J.S. Negligence § 5(3). "Where one creates a dangerous condition by his antecedent active conduct, it is unnecessary to prove that he had notice of such condition." Finney v. G. C. Murphy Co., 406 Pa. 555, 178 A.2d 719, 722 [1962]. A jury question of constructive notice would also arise from the length of time this wall was allowed to stand unsupported and unbraced: several months after the demolition and before the contractor entered the premises.

The application of §§ 416 and 427 require a determination of either (1) a peculiar risk of physical harm unless special precautions are taken, or (2) work involving special danger to others. Again reviewing plaintiff's evidence, it was shown that the wall was not intended for use as an exterior, supporting wall, it was not tied-in or reinforced by connections to the remainder of the existing building, and it was not furnished with exterior bracing. This very situation is illustrated by the example shown under Comment c. to Rule 413, which contains a similar rule of liability to that of § 416.

"Thus, the demolition of a building which involves the removal from a wall of the support of the rafters and adjoining walls may involve a recognizable risk that the wall will fall unless, prior to the removal of the rafters and connecting walls, some substitute support is provided for it."

Similarly, Illustration 2 under Comment c. to § 416 uses the demolition of a house and the necessity of shoring up the wall as an example of "work dangerous in the absence of special precautions."

Cases involving similar fact situations have recognized the standing wall left after demolition as inherently dangerous or attended with danger to others. Fitzpatrick v. Penfield, supra, involved the demolition of a building by a fire, but which nevertheless left one wall standing. The Court recognized "the peril of building walls left standing after a fire." In a very similar case from another jurisdiction, Mallory v. Louisiana Pure Ice & Supply Co., 320 Mo. 95, 6 S.W.2d 617 [1928], "The work required to be done in the instant case, the excavation to be made underneath the wall of height and character shown, cannot be an ordinary building operation. Our conclusion is that it was an operation 'attended with danger to others' or 'intrinsically dangerous' in that its performance would likely result in danger unless proper precautionary measures were taken."

We are satisfied that the evidence permitted a finding by the jury that the work held "a peculiar risk of physical harm to others unless special precautions are taken," or "a special danger to others which the employer knows or has reason to know."

A final question with relation to Venango concerns the identity of the parties contemplated by the Restatement language "others". Does such term "others" include a workman of a contractor employed by the owner? There is a recognized split of opinion among the states on this question. This was recognized in Welker v. Kennecott Copper Co., 1 Ariz.App. 395, 403 P.2d 330 (1965), which held that the protection did not so extend, but stated:

"The case law pertaining to this question the court finds to be in irrecon-

cilable conflict. There is reputable authority holding that these duties pertaining to inherently dangerous work and/or work from which it is probable that there will be injury unless precautions are taken, applies to the employees of an independent contractor."

The adoption of these Restatement Rules in Pennsylvania is recent. The only reported case since the adoption to treat specifically of the word "others" in § 414 was the District Court opinion in Jamison v. A. M. Byers Co., 222 F.Supp. 475 [W.D.Pa., 1962], which held that the term "others" included the contractor's employees under Pennsylvania law. The case was remanded for retrial on other matters not involving this holding, which was not discussed by the Court of Appeals. 330 F.2d 657 [3d Cir., 1964]. The District Court relied upon Pennsylvania cases prior to the adoption of the Restatement Rule by Pennsylvania, where employees maintaining a third party action were allowed to recover against an owner. One of the cases cited by the District Court in Jamison is Spinozzi v. E. J. Lavino and Company, 243 F.2d 80 [3d Cir., 1957]. The Court of Appeals, construing the same pre-Restatement Pennsylvania case-law, states:

"The Pennsylvania Courts have recognized that the employer should be liable where he has retained control of some part of the work, or so interfered with the performance of the job as to have assumed control, and his failure to exercise that control with reasonable care causes harm *to others*." (emphasis supplied).

This is the same word used by the Restatement to describe the persons to whom such liability extends in §§ 413, 414, 416 and 427.

This view has sometimes been described as a minority view, see Welker v. Kennicott Copper Co., supra, but we are shown no Pennsylvania case that suggests that the employee is excluded from the *term* "others", and there is a substantial body of Pennsylvania cases

where the plaintiff was such an employee suing the owner in a third party action without the question being raised. Hader v. Coplay Cement Mfg. Co., cit. supra, has been mentioned as supporting the contention that Pennsylvania held otherwise (see Welker v. Kennicott, supra) but we do not so find. The Court in *Hader* was considering the issue of whether there was sufficient evidence of retention of control, not whether the employee was outside the scope of liability.

We think that the policy in some other jurisdictions of denying recovery in such cases to employees of the contractor is based upon considerations of the effect of the workmen's compensation statutes in those states. Workmen's compensation systems vary considerably in their applicability and in their procedural aspects, and these variances could induce a different view of the employee's rights against the owner of the premises upon which he is called to work. However, in Pennsylvania, the courts have refused to restrict the workmen's compensation law beyond the clear terms of the statute. Jamison v. Westinghouse Electric Corp., 375 F.2d 465 [3d Cir., 1967]. Third party actions on behalf of injured employees are a well established procedure in Pennsylvania and are recognized by the statute. 77 P.S. § 671.

We are convinced that the word "others" as used in Restatement §§ 413, 414, 416 and 427 includes employees of a contractor on the premises of an owner under Pennsylvania law.

The motion of defendant Venango for Judgment N.O.V. will be denied.

### DEFENDANT KOERBER'S MOTION FOR JUDGMENT N.O.V.

The jury's answer to a special interrogatory established that it did not base the liability of Venango on grounds of vicarious liability for the actions of Koerber, its architect. Koerber, in the light of this lawsuit, was again an independent contractor, hired to render architectural design. If we accept plaintiff's evidence that it was the

decision to sever the old building at the point selected and leave the old partition wall standing as an exterior building wall without support, Koerber participated in this. If we accept defendant's evidence that the collapse of the wall was caused by removing the "angle of repose" upon which the old wall rested in order to excavate for footers for the new building, this was done in accordance with Koerber's plans. If the cause of the collapse was the failure to buttress the adjoining wall during construction, or to support it with "needles", there was no such requirement provided in Koerber's plans. Plaintiff's witnesses testified to a condition of the adjoining wall which made it unsafe from the moment of demolition and which would have been apparent from reasonable inspection by a person familiar with building construction. The testimony established standards in the building industry which were not followed by Koerber in the professional services which he rendered.

Such evidence was sufficient in the mind of the court to submit the question of Koerber's liability to the jury and to sustain their verdict against Koerber.

### DEFENDANTS' MOTIONS FOR NEW TRIAL.

In concluding that liability was properly imposed upon the defendants named in the verdict as a matter of law, we have considered the legal grounds upon which such liability was alleged or resisted. For the reasons set forth in the foregoing sections of this opinion denying the motions for judgment n. o. v., we are convinced that the evidence was properly submitted to the jury under the charge given by the court and we can find no basis for the grant of a new trial to any defendant. Accordingly, all of defendants' motions for new trial are denied.

### PLAINTIFF'S MOTION FOR NEW TRIAL ON DAMAGES.

■ Plaintiff has also moved for a new trial on the issue of damages only on the grounds that the verdict was inadequate. The jury awarded $30,000 under the Wrongful Death Act, and $15,000 under the Survival Act. These two must be considered together because there can be no duplication of damages. Survival Act damages are supported by evidence that decedent did not use all his earnings for the support of himself and his family, but was accumulating an estate.

The Court does not find the total award shockingly inadequate. A mathematical computation of evidence of plaintiff's contributions to his family over his expected life might lead to a higher figure if accepted by the jury. But we must consider that the total of such future earnings must be reduced to present worth, and that the verdict represents a present worth reduction of a sum to be expected over a considerable number of years in the future. The award is substantially in excess of the total Workmen's Compensation liability which is a lien on these proceeds.

■ We must all acknowledge that damages are within the competence of the jury and that juries consider many practical matters which are outside the legal considerations given them in the charge of the court. Conflicts in the opinion of jurors produce compromises. The defendants argued the question of contributory negligence and assumption of risk, and these matters were submitted to the jury. While the jury found no contributory negligence or assumption of risk by making its award, there is always the possibility that the amount of the award reflects the influence of this factor. The rule of contributory negligence is a hard rule for jurors to understand; jurors may often compromise their differences of opinion on liability by applying a more reasonable doctrine of comparative negligence reflected in a compromise verdict.

■ The court has no doubt that the absence of the employer disturbed the jury. There was considerable evidence which pointed to negligence of the employer and its causal relation to the in-

jury. We may assume that all jurors are aware of the protection extended to workmen in the Workmen's Compensation Act, but they have no knowledge of how this verdict affects those rights. Perhaps they ought to be told, but under the present state of law they cannot be. The jury indicated this difficulty by their inquiry about the "third party", and their comment that "in one sense we don't feel we have got all the evidence. Maybe we do, but * * *".

Perhaps the jury is influenced by the widespread knowledge of Social Security survivorship benefits for survivors of deceased employees with minor children. We cannot tell them to discard this knowledge; it would only emphasize this factor in the minds of the jurors. The jury may be influenced by the prospects of re-marriage of a young widow. They are not supposed to be, but no judge ever fails to note the evaluative scrutiny which women jurors in particular make of the decedent's widow. It is quite possible that some jurors are aware that the award is free from liability for income tax.

█ One matter of benefit to the plaintiff should be noted here. The beneficiaries of the decedent should not be required to pay any counsel fees on that portion of the award represented by the subrogation interest of the employer or his insurance carrier. The Pennsylvania statute places the obligation for that charge upon the employer and his carrier. The beneficiaries should take the amount of the award represented by the total compensation award free and clear of the obligation for counsel fees, they should only be required to bear the expense of counsel fees on the excess that their attorneys have recovered for them above the compensation liability. That this fee should be substantial in view of the effort and result in this case we do not doubt.

The Court believes that the verdict is within reasonable limits as shown by the evidence, and will deny plaintiff's motion for new trial on the issue of damages.

## PLAINTIFF'S MOTION FOR NEW TRIAL AGAINST DEFENDANTS KLAPEC AND SABOL.

█ Plaintiff has neither briefed nor argued at any length in support of its motion for new trial against Klapec and Sabol, who were not found liable in the jury's verdict. There was evidence that Klapec and Sabol performed their demolition contract according to its terms, left the site and had no further responsibility in connection with it. We believe that their liability was properly submitted to the jury under an adequate instruction and we find no grounds for new trial against them. The motion will be denied.

### ORDER

And now this 25th day of July, 1968, upon consideration of the respective motions filed by the parties after trial and verdict, and upon consideration of the briefs and arguments of counsel, it is ordered that:

1. Motion of Defendants Robert T. Grannis and Sarah Grannis, his wife, for Judgment N.O.V. and New Trial are denied.

2. Motion of Defendant Venango Federal Savings and Loan Association for Judgment in Accordance with Motion for Directed Verdict and for New Trial are denied.

3. Motion of Defendant Edward W. Koerber for Judgment Notwithstanding the Verdict and for New Trial are denied.

4. Motion of Plaintiff Adeline E. Wagner, Administratrix, for New Trial on Damages is denied.

5. Motion of plaintiff Adeline E. Wagner, Administratrix, for New Trial as to Defendants Klapec and Sabol is denied.