Robert A. FISHER

v.

UNITED STATES of America (Third-Party Plaintiff), Appellant in No. 18151,

v.

GEORGE M. BREWSTER AND SON, INC., Appellant in No. 18152, and Berks Steel Service, Inc. (Third-Party Defendants),

v.

H. I. LEWIS CONSTRUCTION COMPANY, Inc. (Third-Party Defendant).

Appeal of BERKS STEEL SERVICE, INC. (Third-Party Defendant), in No. 18153.

Nos. 18151–18153.

United States Court of Appeals, Third Circuit.

Argued Oct. 5, 1970.

Decided April 2, 1971.

Ronald R. Glancz, Department of Justice, Washington. D. C. (William D. Ruckelshaus, Asst. Atty. Gen., Louis C. Bechtle, U. S. Atty., Robert V. Zener, Atty., Dept. of Justice, Washington, D. C., on the brief) for the United States.

Benjamin F. Stahl, Jr., Philadelphia, Pa. (Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., on the brief) for George M. Brewster & Son, Inc.

Lynn L. Detweiler, Philadelphia, Pa. (Swartz, Campbell & Detweiler, Philadelphia, Pa., on the brief) for Berks Steel Service, Inc.

John R. McConnell, Philadelphia, Pa. (Fred F. Fielding, Philadelphia, Pa., on the brief) for Robert A. Fisher.

Before HASTIE, Chief Judge, and STALEY and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

Robert A. Fisher brought this action to recover for injuries he sustained while working on a flood control dam near Renovo, Pennsylvania. The dam was being constructed on land owned by the United States of America and was commonly known as the Kettle Creek Dam Project.[1] The Government had engaged George M. Brewster & Son, Inc. ("Brewster") as general contractor to oversee the construction of the dam. Brewster then subcontracted the bulk of the concrete work to H. I. Lewis Construction Co., Inc. ("Lewis"). Lewis in turn subcontracted the structural steel work for the support of the concrete to Berks Steel Service, Inc. ("Berks"). Fisher was employed by Berks and was in the performance of Berks' subcontract with Lewis at the time he was injured.

Fisher, a new employee of Berks, was injured on his third day at work. He was working in a wooden form built to provide a shape into which concrete would be poured. He had descended into the form to tie and untie reinforcement steel within the walls of the form, part of the work assigned to him by Berks. The walls of the form were pulled together by tie rods and held apart by boards called "spreaders." Fisher was crossing the form from one side to the other by stepping from one spreader to another, using them as a walkway. He had previously seen other employees of Berks do this. The second spreader upon which Fisher stepped broke loose from the form, causing him to fall to a concrete slab some ten feet below, injuring his left ankle.

Fisher brought this action against the United States under the Federal Tort Claims Act.[2] The Government joined Berks, Fisher's employer, and Brewster, the general contractor, seeking indemni-

ty of, or contribution to, any verdict that the Government might become obligated to pay. Brewster subsequently joined Lewis, seeking contribution or indemnity. Lewis then filed a cross claim against Berks, alleging that Lewis was entitled to indemnity or contribution from Berks. Brewster then filed a similar cross claim against Berks.

The case was tried without a jury. The district court found in favor of Fisher and entered judgment against the United States.[3] However, the district court held the Government entitled to full indemnity from Berks and Brewster for the amount of the judgment. The district court also held that Brewster's subcontractor, Lewis, was obligated by the terms of the subcontract to fully indemnify Brewster. In addition, the court held that both Lewis and Brewster were entitled to full indemnity from Berks, because it found Berks to have been primarily negligent and Lewis and Brewster to have been only secondarily negligent. The result of the district court's decision, 299 F.Supp. 1, therefore, is that Berks will be responsible for satisfying the judgment entered against the United States.

Because of its structure, the entire judgment will fail if no basis exists for finding liability on the part of the United States. We must, therefore, first consider the district court's conclusion that the Government was liable for the injuries sustained by Fisher. At the outset, we note that since the acts or omissions complained of occurred in Pennsylvania, that state's law is applicable under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

The district court's holding that the United States was liable to Fisher was based upon its findings that (1) the Government was in possession of the land on which the dam was being built; (2) the Government's resident engineer at the site, who was in general charge of

---

1. The dam was later named the Alvin R. Bush Dam.

2. 28 U.S.C. §§ 1346(b) and 2671 et seq.

3. The judgment was in the amount of $110,-280.36.

the construction and whose duties included supervision of the safety inspection work of the Government's inspection force at the site, was aware that the contractors might hire inexperienced workmen; (3) the Government had reason to know that there were workmen on the site who made a practice of stepping on spreaders; and (4) the Government required the contractor to follow a safety plan and had the power to require the inclusion of safety regulations in that plan.

The district court considered that such facts placed the United States squarely within the class of persons subject to those obligations of possessors of land set forth in Restatement of Torts (Second) § 318.[4] This section of the Restatement has been adopted as law and applied by the Supreme Court of Pennsylvania in Glass v. Freeman, 430 Pa. 21, 240 A.2d 825 (1968). The district court concluded that since the United States was in possession of the land and had permitted third persons, here Brewster, Berks, and Lewis, to conduct activities on that land, it had a duty to protect its invitees, including Fisher, from any unreasonable risks of harm which might arise from those activities. The district court further concluded that the Government knew or had reason to know that it had the ability to control the third persons and that the Government knew or had reason to know of the

necessity and opportunity for exercising control. The Government's failure to warn Fisher of the danger of stepping on spreaders or to see to it that Berks, as Fisher's employer, warned him, was viewed by the district court as a breach of the duty owed to him as an invitee under § 318 of the Restatement, supra.[5]

■ Judicial review of the district court's finding that the United States was negligent is limited to a consideration of whether under Rule 52(a) of the F.R.C.P. that finding is clearly erroneous. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is convinced on the whole record that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 68 S. Ct. 525, 92 L.Ed. 746 (1948).

In the instant case, the very heart of the judgment against the Government is the district court's finding that the United States was in possession of the construction site. This finding was based on evidence that (1) the Government had a resident engineer at the site who was in general charge of the construction and who had authority to require the contractor's compliance with a safety plan, and (2) the Government had two inspectors [6] whose duties included seeing that the work was done in accordance with specifications, enforcing safe-

---

4. "§ 318. Duty of Possessor of Land or Chattels to Control Conduct of Licensee
"If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor
"(a) knows or has reason to know that he has the ability to control the third person, and
"(b) knows or should know of the necessity and opportunity for exercising such control."

5. The district court viewed Berks' failure to warn Fisher as primary negligence and viewed the negligence of the United States, Brewster, and Lewis, in failing to oversee Berks' safety indoctrination, as secondary negligence. The degree of negligence pertains only to the questions of indemnity and not to the basic question of liability to Fisher.

6. The exact number of Government inspectors present at the site is not clear from the record. The district court found that on the day of the accident the Government had two inspectors in the area where Fisher was injured. Weaver, the Government's resident engineer, testified that he thought that there had been a total of four Government men at the site at that time.

ty regulations, and issuing safety directions.[7] We do not view the presence of a few Government employees at the construction site of a large dam as being evidence that the United States was in possession of the site.

The law of Pennsylvania makes it clear that one who employs an independent contractor may also employ a person to ascertain that the work is done according to plans and specifications and that the employment of such a person in no way indicates that the independent contractor is being subjected to control. Hader v. Coplay Cement Mfg. Co., 410 Pa. 139, 189 A.2d 271 (1963); Townsend v. City of Pittsburgh, 383 Pa. 453, 119 A.2d 227 (1956); Pennsylvania R. Co. v. Allegheny County, 324 Pa. 216, 188 A. 178 (1936). This is a corollary to the long recognized general right of inspection and supervision that an owner normally enjoys and exercises to insure his receiving from the contractor the benefit or total performance bargained for. In employing those men, the United States was only seeking to protect itself and to insure that the contractors were performing in the manner required of them under the contract. Gowdy v. United States, 412 F.2d 525, 529 (C.A. 6, 1969), cert. denied, 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 1969); [8] Roberson v. United States, 382 F.2d 714, 721 (C.A. 9, 1967). We conclude that the district court's finding that the United States was in possession of the site based on the presence of the Government's engineer and inspectors was clearly erroneous. United States v. United States Gypsum Co., supra.

The district court placed great reliance on the decision of the Pennsylvania Supreme Court in Glass v. Freeman, 430 Pa. 21, 240 A.2d 825 (1968), wherein the court applied the principles contained in § 318 of the Restatement. In that case, a couple named Freeman who owned and operated a tavern had secured the aid of several of their relatives and neighbors to help them blacktop the surface of the tavern's parking lot. The couple's son-in-law was operating a borrowed tractor to roll the surface. The tractor, left unattended for a moment, was set into motion by the son-in-law's child and injured one of the neighbors working a short distance away. The court held that the Freemans, as possessors of the land, owed a duty to their neighbor-invitee to control their independent contractor, the son-in-law, whom they had employed.

We do not view Glass as being applicable to the instant case. As we have previously noted, the Government's presence at the site through its engineer and inspectors does not constitute possession as contemplated by § 318. More importantly, however, we do not think that § 318 can apply to a situation involving a large and complex construction site such as the Kettle Creek Dam project. In these situations, the prime independent contractor actually takes over the site. As in the instant case, he employs various subcontractors, and all the contractors collectively move in large amounts of material, equipment, and personnel. The owner's prime concern is to see to it that the contract is performed. It was for this purpose that the United States maintained an engineer and inspectors at the site. A large construction project is certainly not the same as the situation presented in Glass v. Freeman, supra. There the court recognized that supervision by the owner-possessor of the land was especially called for because an ama-

---

7. The district court's conclusion that the United States knew that it had the ability to control the contractors and that it had reason to know of the need to control them to warn and protect Fisher is based for the most part on this same evidence.

8. The district court relied to some extent upon Gowdy v. United States, 271 F. Supp. 733 (W.D.Mich., 1967), because Michigan law is quite similar to Pennsylvania law in this area. The Court of Appeals later reversed the district court's judgment against the United States, however, holding that the mere reservation of the right to inspect the work did not impose upon the Government any duty of inspection or control.

teur work group had been assembled and such a temporary group could not be expected to supervise its own project as a professional contractor might. It is clear that the district court erred in relying on *Glass* as the applicable Pennsylvania law.

We view the decision in Hader v. Coplay Cement Mfg. Co., 410 Pa. 139, 189 A.2d 271 (1963), as being more applicable to a large construction site situation. There the plaintiff-invitee was an employee of an independent contractor hired to install a stone crusher at Coplay's quarry. The court held that possession of the area where the equipment was being installed had been transferred to the independent contractor and denied recovery, stating:

> "An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises." 410 Pa. at 151, 189 A.2d at 277.

The comment by the court that the owner was without control was in respect to the owner's control as possessor of the site.[9] The control exercised by the Government's engineer and inspectors in the instant case was exercised to insure compliance with the contract and not to control the contractor's activities. These men were only the presence of the owner at the site. In this context, it is impossible to consider the Government's liability as that of a possessor of land as is contemplated by § 318.

Fisher, while placing primary reliance on § 318, contends that the judgment against the United States can also rest on principles of vicarious liability. He argues that the Government is liable vicariously for the negligence of its independent contractors, who failed to warn him, because the Government had retained control over the work and safety practices of its contractors and thus shares the responsibility for their negligence. This same argument has been advanced in many personal injury actions arising out of Government construction projects and has been consistently rejected. See, e.g., Gowdy v. United States, 412 F.2d 525 (C.A. 6), cert. denied, 396 U.S. 960, 90 S.Ct. 437, 24 L. Ed.2d 425 (1969); Market Insurance Co. v. United States, 415 F.2d 459 (C.A. 5, 1969); Wright v. United States, 404 F.2d 244 (C.A. 7, 1968); Roberson v. United States, 382 F.2d 714 (C.A. 9, 1967); Lipka v. United States, 369 F.2d 288 (C.A. 2, 1966); Grogan v. United States, 341 F.2d 39 (C.A. 6, 1965); United States v. Page, 350 F.2d 28 (C.A. 10, 1965), cert. denied, 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966). These cases have uniformly held that the United States may not be held liable for injuries to workmen on Government job sites merely because it retains the right, and actually undertakes, to require adherence to safety regulations and to inspect for compliance with its contract.

We conclude that there is no basis for finding the United States liable to Fisher for the injuries he sustained at the dam site. The judgment of the district court will, therefore, be reversed.

---

9. The owner in Hader v. Coplay Cement Mfg. Co., 410 Pa. 139, 189 A.2d 271 (1963), had employed an expert to see to it that the machinery was properly installed. The court expressly held that this had no effect upon the owner's having transferred possession of the site to the independent contractor.