Stella D. MOSS, Administratrix of the
Estate of Michael D. Woods and
Connie Woods, Plaintiffs,

v.

SWANN OIL, INC., and Gypsum
Development, Inc., Defendants
and Third-Party Plaintiffs,

v.

FISHER TANK AND WELDING CO.,
Third-Party Defendant.

Civ. A. No. 74–19.

United States District Court,
E. D. Pennsylvania.

Dec. 9, 1976.

As Amended Feb. 8, 1977.

R. David Bradley, Philadelphia, Pa., for plaintiffs.

Joseph V. Pinto, White & Williams, Philadelphia, Pa., for defendants.

Walter J. Timby, Jr., LaBrum & Doak, Philadelphia, Pa., for third-party defendant.

## MEMORANDUM AND ORDER

CAHN, District Judge.

Michael D. Woods was severely injured on January 18, 1973, while he was employed as a welder for Fisher Tank and Welding Co. Suit was brought against Swann Oil, Inc., Gypsum Development, Inc., Patterson Equipment Co., and J. E. Brenneman Co. to recover damages for the personal injuries he sustained.[1] Michael D. Woods later died from unrelated causes and his administratrix has been permitted to be substituted as one of the plaintiffs. Swann Oil, Inc., and Gypsum Development, Inc. (related companies hereinafter referred to as "Swann" and "Gypsum") filed a third-party complaint against plaintiff's employer, Fisher Tank and Welding Co. ("Fisher").

In the first part of a bifurcated trial, the jury imposed liability against Swann and Gypsum in regard to plaintiffs' claims, and also imposed liability against Fisher on the third-party claim. In the second phase of the bifurcated trial a jury awarded the plaintiffs damages in the amount of $125,-000.

Fisher, at the time of the accident, was erecting a cylindrical steel oil storage tank on premises owned and/or controlled by Swann and Gypsum. The method used to erect this steel oil storage tank was to hoist into place the plates constituting the sides of the tank, temporarily securing them, and then affixing the steel plates in permanent position by welding. The circumference of the tank in question is approximately 465 feet. Each steel plate is thirty-one feet in length and eight feet high. Six levels of plates are installed, thus the height of the

---

1. Patterson Equipment Company and J. E. Brenneman Co. were dismissed as parties to these proceedings.

tank is forty-eight feet. Michael Woods was working, at the time of his accident, as a welder on the next to the last steel plate to be installed on the sixth level of the tank. He was positioned in what is known as a welding buggy. The welding buggy was attached to the top of the steel plate, which was not yet permanently welded. This buggy moves on rollers in a horizontal direction. The accident occurred when the steel plate fell, carrying the welding buggy, with the plaintiff inside, to the ground.

The plaintiffs rely on two separate theories. The first claim is founded on Restatement (Second) of Torts § 414, which provides as follows:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Plaintiffs' second theory is premised on Restatement (Second) of Torts § 416, which provides as follows:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

**2.** 1. (a) Did Swann and Gypsum retain control of any part of the work to be done by Fisher?

ANSWER: YES

(b) Were Swann and Gypsum negligent in failing to exercise the control they retained with reasonable care?

ANSWER: YES

(c) Was the failure of Swann and Gypsum to exercise the control they retained with reasonable care a proximate or substantial factor in causing the injury suffered by Mr. Woods?

ANSWER: YES

2. (a) Was Fisher negligent in regard to the injury suffered by Mr. Woods?

The liability phase of the case was submitted to the jury through the use of special interrogatories.[2] Both Swann and Gypsum and Fisher have moved for judgment notwithstanding the verdict or, in the alternative for a new trial. Neither Swann and Gypsum nor Fisher take issue with the jury's finding on the damage issue.

Swann and Gypsum's first contention is that plaintiffs failed to produce sufficient evidence to justify submission of their § 414 claim to the jury. Section 414 has been declared to be the law of the Commonwealth of Pennsylvania. *Byrd v. Merwin*, 456 Pa. 516, 317 A.2d 280 (1974). To come within the orbit of § 414, it is incumbent upon the plaintiffs to establish that Swann and Gypsum retained control of work to be performed by Fisher. This is a factual issue which has been properly left to the jury for its determination. While the proof of retention of control is far from overwhelming, a project engineer from Swann and Gypsum was at the site every day for a five month period, and he concerned himself with such matters as timetables and safety. Therefore, the jury has decided the control issue, and I am reluctant to interfere with their judgment on that point. However, § 414 imposes liability only if the controlling parties were negligent by failing to exercise the control they retained with reasonable care. There is simply no evidence in the record to support the contention of the plaintiffs that Swann and Gypsum were negligent in that regard, and, therefore, plaintiffs' verdict cannot stand under § 414.

ANSWER: YES

(b) Was the negligence of Fisher a proximate or substantial factor in causing the injury to Mr. Woods?

ANSWER: YES

(c) Did Swann and Gypsum contract with Fisher to do work involving, in the absence of special precautions, a peculiar risk of harm to others, and should Swann and Gypsum have recognized the risk, and was the injury to Mr. Woods caused by the failure of Fisher to exercise reasonable care to take such precautions?

ANSWER: YES

Plaintiffs' second theory, under § 416, involves a concept of vicarious liability. Section 416 has been adopted by the Commonwealth of Pennsylvania. *Phila. Electric Co. v. Julian,* 425 Pa. 217, 228 A.2d 669 (1967). That case holds at page 220, 228 A.2d at page 671.

Sections 416 and 427 recognize that there exists a vicarious liability on the part of an employer of an independent contractor, which imposes upon the former responsibility in damages for the negligence of the latter, regardless of the fault of the former.

For this vicarious liability to arise, it is first necessary that the independent contractor commit an act of negligence which causes plaintiff's injury. In this regard, the jury found that Fisher was negligent and that such negligence did cause Michael Woods' injury. The record contains sufficient evidence to justify the jury's conclusion, because plaintiffs' experts opined that the welding buggy was akin to a scaffold and that the Occupational Safety and Health Act regulations [see 29 C.F.R. § 1926.-452(27)] were violated because there were no independent supports for the buggy other than the temporarily secured steel plate in question.

Swann and Gypsum vociferously contend that plaintiffs' experts are insufficiently qualified in the field of erecting steel oil storage tanks and, therefore, objections to their testimony should have been sustained. One of the plaintiffs' experts, Mr. Goldstein, holds a Degree of Bachelor of Science, Civil Engineering and a master's degree in physics. He is a Registered Professional Civil Engineer and a member of the American Society of Civil Engineers. He had experience in engineering design, construction work, and accident investigation. Although he lacks practical experience in the construction of oil storage tanks, his impressive academic credentials and extensive experience in related areas thoroughly support his opinion being received. The weight of his opinion, however, was for the jury, who were so instructed.

Plaintiffs' other expert was Dr. Bernard McNamee who is a professor of civil engineering at Drexel University. He is acting chairman of that department and holds a doctor of philosophy degree in Engineering from Lehigh University. He had practical experience working for Sun Ship Company, and worked for one and one-half years for the Penn Central Railroad on bridge construction. At Sun Ship he performed engineering services in regard to the construction of large tanks, twenty-one feet in diameter by one hundred feet in length. While he also lacked practical experience in the construction of oil storage tanks, he was clearly qualified to express an opinion in this case, and the weight of that opinion was for the jury. Dr. McNamee expressed familiarity with the OSHA regulations, and in his opinion, use of a welding buggy under the facts of this case constituted a violation of such regulations. [see, 29 C.F.R. § 1926.451]

Swann and Gypsum, as well as Fisher, contend that their experts had extensive experience in the construction of oil storage tanks. Their experts testified that the use of welding buggies has been approved in both New York and California, does not violate OSHA regulations and that oil storage tanks cannot be erected without the use of such buggies in the manner in which they were used in this instance. While the opinions of the defendants' experts were founded on practical experience, that factor alone is no reason to disturb the verdict of the jury, who hear all the experts testify and who were properly instructed on how to deal with expert opinion.

The jury, having found Fisher negligent and that such negligence was a substantial factor in causing Michael Woods' injury, were instructed to determine whether the plaintiffs established the necessary elements to impose liability under § 416. The jury found that the work Michael Woods was doing involved, "in the absence of special precautions, a peculiar risk of harm to others", which Swann and Gypsum should have recognized and, therefore, vicarious liability was imposed pursuant to

§ 416. The issue of whether the work Woods was doing for Fisher involved peculiar risks was properly left to the jury. See *Jacobini v. International Business Machines Corp.*, 57 D. & C.2d 8 (1972), *aff'd*, 222 Pa.Super. 750, 294 A.2d 756 (1972).

Considering the facts of this case and the findings of the jury in answer to special interrogatories, the motion of Swann and Gypsum for both judgment notwithstanding the verdict and for a new trial will be denied.

■ There are two other matters for consideration. Fisher contends that since it is a third-party defendant, and since liability against it is predicated upon either contribution or indemnity, its joinder was improper on the ground that the recent amendments to the Pennsylvania Workmen's Compensation Statute, effective February 5, 1975, precludes such joinder after the effective date. Joinder in this case occurred on June 19, 1974, which is prior to the effective date of the statute. This court has held that the nonjoinder provision does not apply retroactively to an accident arising before the effective date of the Act. *Wesolowski v. Rhoades*, 416 F.Supp. 1052 (E.D.Pa.1976); *Brescia v. Ireland Coffee-Tea, Inc.*, 412 F.Supp. 488 (E.D.Pa.1976).

■ Swann and Gypsum advance the proposition that since their liability is vicarious and based upon the liability of Fisher, they are entitled to indemnification by Fisher. In my judgment, *O'Neill v. United States*, 450 F.2d 1012 (3d Cir. 1971) is dispositive. That case held that there is no right to indemnity as sought by Swann and Gypsum in this case. The *O'Neill* court reasoned that since the Workmen's Compensation Act was not compulsory upon the employer, to allow indemnification would result in encouraging employers to refuse to participate in the workmen's compensation program, and found such a result to be contrary to public policy. Swann and Gypsum contend that the policy arguments referred to in *O'Neill* are no longer pertinent because of the subsequent amendment of the Workmen's Compensation Act [*see*, 77 P.S. § 431, as amended on March 29, 1972,

and December 5, 1974]. Be that as it may, *O'Neill* is a clear directive to me not to award the indemnity requested by Swann and Gypsum.

The motions of the defendants and third-party defendant will be denied. Swann and Gypsum, however, are to be given credit, against the verdict, for any amount paid to the plaintiff by the workmen's compensation insurance carrier for Fisher.