**Joseph DiSALVATORE and Mary DiSalvatore, Administrator and Administratrix of the Estate of Michael DiSalvatore, Deceased**

v.

**UNITED STATES of America.**

Civ. A. No. 76–1794.

United States District Court,
E. D. Pennsylvania.

Sept. 15, 1978.

Daniel L. Thistle, Beasley, Hewson, Casey, Colleran & Stopford, Philadelphia, Pa., for plaintiff.

Charles B. Burr, II, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for defendant.

### MEMORANDUM

JOSEPH S. LORD, III, Chief Judge.

This action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, alleges that plaintiffs' decedent was killed as a result of defendant's negligence. The defendant has moved for summary judgment on the ground that any negligence which caused the decedent to be injured was conduct not of it or of its employees but rather of the independent contractors who were in possession of the construction site where the decedent was injured. Under the Federal Tort Claims Act, the defendant correctly points out, the United States cannot be vicariously liable for the negligence of persons other than its employees. Because we cannot conclude as a matter of law that the defendant is free of liability for its own employee's negligence, however, we will deny the motion.

The decedent, an employee of the American Bridge Company was working on construction of the Social Security Administration Payment Center in Philadelphia when he fell from the sixth to the ground floor of the construction project. The defendant had entrusted the construction of this building to the General Services Administration, Public Buildings Service ("GSA"). GSA then entered into a contract with the Turner Construction Company ("Turner"), which provided that Turner would be GSA's overall construction manager for the project. GSA also entered into a construction contract with a joint venture consisting of Owens-Corning Fiberglass Corporation and Wolff & Minier Incorporated ("joint venture"), which was prime contractor for the construction project. The joint venture in turn engaged the Tishman Construction Company ("Tishman") as its construction manager. Tishman contracted with American Bridge Division of United States Steel Corporation ("American Bridge") for the design, fabrication and erection of structural steel at the site.

During the course of his employment with American Bridge, the sub-subcontractor, DiSalvatore was removing planking from an elevator shaft opening on the sixth floor when he lost his balance and fell down the shaft. Because there was no covering over the elevator shaft openings on any floor beneath the sixth, DiSalvatore's fall was unbroken and he was killed. The failure to cover the shaft on each of these floors violated the Occupational Safety and Health Administration's Safety and Health Regulations for construction, 29 C.F.R. § 1926.500, which were incorporated by reference into every contract relating to the construction.

We will assume for purposes of this motion that Albert Kandra, GSA's resident engineer, was the only government employee at the job site, and that the other entities involved in this construction were independent contractors with respect to the govern-

ment. Kandra's job included the duties of coordinating the work of GSA's contractors and resolving factual disputes between the contractors and Turner, GSA's construction manager. Such a dispute developed when the subcontractor of Turner which was constructing the elevator continually removed the shaft protections in order to drop lines for rail installation after American Bridge, a subcontractor of Tishman and the decedent's employer, had replaced the protection. Turner and Tishman each claimed that the other had the responsibility to replace protections in floor openings. The result of this dispute was that neither one replaced the covering and the elevator shaft was left uncovered on the floors beneath the sixth. The plaintiffs allege that the defendant's employee, Kandra, negligently failed to coordinate the work and to resolve the dispute between the elevator contractor and American Bridge, and that as a result of this negligence the openings were uncovered at the time decedent fell. Thus, the plaintiffs argue, defendant is directly responsible for decedent's death.

In determining whether the defendant can be liable for the negligence of an employee under the Federal Tort Claims Act, we must determine whether any claim would lie against it under the law of the state where the allegedly tortious act or omission occurred, Pennsylvania, 28 U.S.C. § 1346(b), with the limitation that vicarious liability cannot attach for acts of persons who are not United States employees. As the defendant correctly points out, employers of independent contractors generally are insulated from liability under § 409 of the *Restatement (Second) of Torts* (1965), which provides that with certain exceptions "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." Insofar as this action is based on acts or omissions by the independent contractors, the defendant would not be liable to the plaintiffs under Pennsylvania law because of this doctrine.

But the basis of the plaintiffs' claim based on Kandra's negligence is not the conduct of the independent contractors and their employees. Rather, it is the alleged negligence on the part of the defendant's employee in an area of the work where control was maintained by an employee of the defendant rather than relinquished to an independent contractor and its employees—namely, the resolution of the dispute over who had the responsibility to replace the elevator shaft protections. An employer can be liable for the negligence of its employee in this situation under § 414 of the *Restatement (Second) of Torts* (1965), which the Pennsylvania Supreme Court explicitly adopted in *Byrd v. Merwin*, 456 Pa. 516, 317 A.2d 280 (1974). Section 414 provides:

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

This section imposes liability on a defendant because of the defendant's own negligence or that of defendant's own employees and not because of the negligence of an independent contractor. Thus, § 414 can be the basis for liability under the Federal Tort Claims Act.

In *Byrd v. Merwin*, the property owner had retained the power to direct the order in which the work should be done. Contrary to the usual order of construction, a staircase was installed by a contractor after rather than before the electrical wiring was begun, and the plaintiff electrician was injured when a section of the uncompleted staircase fell. The Supreme Court upheld a verdict against the property owner by applying § 414. Its analysis relied principally on the second part of comment a to that section, which states:

"The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner

likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others."

The comment makes it clear that the control retained in *Byrd v. Merwin, i. e.,* to mandate the order in which the work should be done, is sufficient to invoke § 414 liability. This control, and the supervisory controls discussed in that comment generally, can be characterized as retained power to direct how the work should be done, in distinction to control over the results of the work. However, I see no qualitative difference between control over how the work should be done and the power to determine which subcontractor should do what in the event of a dispute between them during construction. In each instance, the employer of the independent contractor maintains jurisdiction to decide not merely what the product of the work will be and whether that work will go on, *see Toole v. United States,* 443 F.Supp. 1204, 1223–24 (E.D.Pa. 1977), *quoting Restatement (Second) of Torts* § 414, Comment c (1965), but rather over the way in which the independent contractors will produce that result.

A limitation as to what retained control by an employer can provide the basis for § 414 liability is imposed by comment c to that section, which states:

"*c.* In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such retention of a right of supervision that the contractor is not entirely free to do the work in his own way."

The purpose of the rule expressed in comment c is to insulate one employing an independent contractor from liability when the employer possesses only a general right of inspection and supervision to insure that the contractor is complying with the terms of the contract, that is, to oversee the *results* of the work. *See Fisher v. United States,* 441 F.2d 1288 (3d Cir. 1971). In contrast to the right to supervise the results of the work is the right of control over the *conduct* of the work at the construction site. This is the sort of control that exists in this case since once the dispute arose only the defendant's employee and not the contractors had the right to determine who should be responsible for the replacement of the protections.

Our determination that the defendant's power constitutes "retained control" under § 414 is dispositive of this motion. While this provision limits the liability of an employer to persons to whom they owe a duty to exercise reasonable care, we certainly cannot say as a matter of law that the defendant owed no such duty to the decedent. Furthermore, we cannot hold at this point that the defendant exercised reasonable care in its retained powers, particularly in light of the evidence that Kandra, the defendant's employee, had at least constructive notice of the dispute concerning the responsibility to cover the elevator shaft openings and of the danger posed by this dispute. Nor are we able to determine at this point whether the defendant's negligence in exercising this control, assuming there was such negligence, was the proximate cause of death. For these reasons, the defendant's motion for summary judgment will be denied.