**James SHARKEY**

v.

**AIRCO, INC. t/a Jackson Products**

**and**

**Irwin & Leighton Construction Co., Inc. t/a Hospital Constructors, R. M. Shoemaker Company, Inc., t/a Hospital Constructors, Thomas Jefferson University and Williard, Inc.**

**Civ. A. No. 79–70.**

United States District Court, E. D. Pennsylvania.

Sept. 18, 1981.

Paul N. Sandler, Hovsepian & Sander, Philadelphia, Pa., for plaintiff.

Robert St. Leger Goggin, Marshall, Dennehey & Warner, Philadelphia, Pa., for defendant.

A. Grant Sprecher, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for Thomas Jefferson University.

Donald J. P. Sweeney, McWilliams & Sweeney, Philadelphia, Pa., for Williard, Inc.

## OPINION AND ORDER

JOHN MORGAN DAVIS, Senior District Judge.

The issues presented in this diversity action provide a framework for discussion of the well established Pennsylvania law relating to the interrelationship of building contractors and property owners, and their corresponding tort duties. Although well settled, the substantial litigation in this area of law belies the apparent clarity of its legal principles.

Plaintiff James Sharkey was an employee of Williard, Inc., a sub-contracting firm engaged by the general contractor, Hospital Constructors, to perform mechanical and electrical work on a hospital under construction at 11th and Walnut Streets in Philadelphia. Thomas Jefferson University, the property owner, hired Hospital Constructors [1] to direct the construction project. On January 11, 1977, during the course of his employment with the sub-contractor, plaintiff sustained serious injuries from a relatively minor fall. Snow and ice had accumulated on the roof of the unfinished hospital building where plaintiff was engaged in the operation of loading equipment. The plaintiff and his co-workers cleared the snow and ice from areas of the roof, and piled it in mounds throughout the workplace to clear a path upon which a dolly could easily pass with equipment

---

1. Hospital Constructors is a joint venture consisting of Irwin & Leighton Inc. and R. M. Shoemaker Company.

dropped by crane. While standing on one of these mounds of snow to avoid an oncoming dolly, plaintiff slipped and fell striking his head.

Plaintiff, thereafter, filed suit against Airco, Inc., the manufacturer of the hard hat he wore, alleging that the product was defective and asserting claims in strict liability, negligence and breach of warranty. Airco, Inc., then instituted third party complaints against Thomas Jefferson and Hospital Constructors alleging that one or both owned, possessed, maintained and controlled the area where plaintiff's accident occurred and that plaintiff's injuries resulted solely from their negligence. Following a fourth party complaint against Williard, Inc. by the third party defendant, Thomas Jefferson, for indemnity and contribution and cross-claims among all defendants,

Thomas Jefferson filed a motion for summary judgment.

In its motion Thomas Jefferson asserts that under the undisputed facts, as an "employer of an independent contractor it is not liable for physical harm caused another by an act or omission of the contractor or his servants." Restatement of Torts, 2nd. § 409.[2] Plaintiff Sharkey and defendant Airco, Inc., however, invoke the exceptions to this general rule embodied in Sections 414 and 416 of the Restatement.[3] For the reasons which follow, the defendant Thomas Jefferson, is entitled to judgment as a matter of law under the aforementioned theories of liability; therefore summary judgment is granted.[4]

## II. SECTION 414 LIABILITY—RETENTION OF CONTROL.

Section 414 of the Restatement[5] is not a direct theory of respondeat superior

2. The forerunner of the Restatement codification of this rule is embedded in Pennsylvania jurisprudence. In *Hader v. Coplay Cement Co.*, 410 Pa. 139, 189 A.2d 271 (1963) the court explained the theory as follows:

An owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in possession of the contractor: *Grace v. Henry Disston & Sons, Inc.*, 369 Pa. 265, 85 A.2d 118. See also: *Langdon v. Park Realty Co.*, 254 Pa. 86, 98 A. 777: *Super v. West Penn Power Co.*, 392 Pa. 159, 140 A.2d 20. An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises: *Bitting v. Wolfe*, 368 Pa. 167, 82 A.2d 21; *Engle v. Reider*, 366 Pa. 411, 77 A.2d 621; *Patterson v. Palley Manufacturing Co.*, 360 Pa. 259, 61 A.2d 861; *Valles v. Peoples-Pittsburgh Trust Co.*, 339 Pa. 33, 13 A.2d 19; *Powell v. Ligon*, 334 Pa. 250, 5 A.2d 373.
Id. at 151, 189 A.2d at 277. See also *Gonzalez v. U. S. Steel Corp.*, 248 Pa.Super. 95, 107, 374 A.2d 1334, 1340 (1977); *McDonough v. U. S. Steel Corp.*, 228 Pa.Super. 268, 273–74, 324 A.2d 542, 545 (1974).

3. Generally, under Pennsylvania law an employer, landowner, can be liable to the employees of an independent contractor contrary to the common law rule under the Restatement of

Torts, Second, Sections 414 and 416. *Draper v. Airco Inc.*, 580 F.2d 91, 102 (3rd Cir. 1978) (citing cases); But see *Donch v. Delta Inspection Services*, 165 N.J.Super. 567, 398 A.2d 925 (1976) (Refusing to extend Section 416 vicarious liability to employees of independent contractors in New Jersey). The theories of liability under these sections are distinct. Section 414 liability is predicated on the direct negligence of the owner of the premises, while Section 416 is a variation of respondeat superior which imposes liability vicariously.

4. In granting the motion, the court is cognizant of the view in this circuit that summary judgments should be used "sparingly" since it bars litigants from presenting their case to a jury. *Tose v. First Pennsylvania Bank*, 648 F.2d 879 (3rd Cir. 1981); *Harold Friedman, Inc. v. Krager*, 581 F.2d 1068, 1080 (3rd Cir. 1978). Nevertheless, assuming the truth of the non-movant's allegations and drawing all inferences in his favor, the court is convinced that no genuine issue as to material fact remains for trial with respect to the claims against the defendant, Thomas Jefferson, and that the moving party is entitled to judgment as a matter of law. *Walh v. Rexnord*, 624 F.2d 1169, 1181 (3rd Cir. 1980); *Scott v. Plante*, 532 F.2d 939, 945 (3rd Cir. 1976); *Kotmair v. Gray*, 505 F.2d 744, 746 (4th Cir. 1974).

5. Section 414 of the Restatement of Torts, Second, states:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the

under the law of agency, but is designed to impose liability on an employer who, while employing an independent contractor, exercises a certain degree of control as to supervision. *Byrd v. Merwin*, 456 Pa. 516, 519, 317 A.2d 280, 282 (1974). Under Section 414 liability is imposed only if the parties were negligent by failing to exercise reasonable care in controlling the work. *Moss v. Swan Oil*, 423 F.Supp. 1280, 1282 (E.D.Pa. 1977). Thus, Section 414 liability is based exclusively on the direct negligence of the landowner-employer or that of his own employees, and not upon any negligence of an independent contractor which may be imposed vicariously on the landowner. *DiSalvatore v. United States*, 456 F.Supp. 1079, 1081 (E.D.Pa.1978).

The courts seem to have struggled to delineate the precise degree of retained control necessary to establish liability under this section. Distinguishing the degree of control necessary to establish an agency relationship and that necessary to impose Section 414 liability, Judge Adams has stated that although the operative details of the work activities are not determined by the general employer, retention of broad supervisory and operational authority for such activities may be sufficient under Section 414 to establish liability. See *Gibson v. United States*, 567 F.2d 1237, 1248 n.6 (3rd Cir. 1973), cert. denied, 436 U.S. 925, 98 S.Ct. 2819, 56 L.Ed.2d 768 (1978) (Adams, J., concurring). Explaining the supervisory nature of control, Pennsylvania has adopted comment (c) of Restatement Section 414. This section makes clear that the scope of control must be over the manner in which the work is done. *Hargrove v. Frommeyer & Co.*, 229 Pa.Super. 298, 310, 323 A.2d 300, 307 (1974); *Celender v. Allegheny Co. San. Auth.*, 208 Pa.Super. 390, 395–96, 222 A.2d 461, 464 (1966). The right of supervision must evince that the " 'contractor is not

entirely free to do the work in his own way'." *Id.*

In *Celender*, supra, the court held that a provision in a contract giving the employer the right to observe the fulfillment of safety requirements with the right to order them fulfilled if the contractor did not do so was not sufficient control to impose liability under Section 414. 208 Pa.Super. at 395, 222 A.2d at 463. Noting that the obligation to insure safety was imposed on the general contractor, the court stated that only when the contractor fails in the performance of his duty is the owner given the right to act. *Id.* Furthermore, the court indicated that the contractor had full authority in performance of the work prescribed by the contract, notwithstanding the presence of the defendant's engineer at the job site and his right with regard to the safety conditions.

*Celender* seems to have been undermined to some degree by *Byrd v. Merwin*, 456 Pa. 516, 317 A.2d 280 (1974). Refusing to grant the defendant, property owner, judgment notwithstanding a verdict, the court held that the evidence of control was sufficient where the owner retained the power to direct the order of work; the owner hired the subcontractor rather than the general contractor; the owner paid the materialmen and the general contractor testified that he was second in command to the owner. *Id.* at 521, 317 A.2d at 282. Principally, the court relied on comment (a) of the Restatement and concluded that the power to mandate the order in which the work shall be done was sufficient control to invoke Section 414 when there was a nexus between the exercise of such power and the resultant safety defect.[6] Comment (a) also suggests that the power to forbid the work from being done in a manner likely to be dangerous to himself or others may be sufficient to invoke Section 414. *Celender,*

employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

6. The defendant, contrary to the usual order of construction, ordered a staircase installed after, rather than before, the electrical wiring was

begun, and the plaintiff electrician was injured when the uncompleted staircase fell. *Id.* Cf. *Shannon v. Howard Wright Const. Co.*, 593 P.2d 438 (Mont.1979) (Owner ordered carpenters to another work area causing inadequate access to building whereupon plaintiff fell).

however, classified this type of power reserved in the contract as only a general right of supervisory power. 209 Pa.Super. at 395, 222 A.2d at 464. Thus, there seems to be some inconsistency between the two cases.

Discussing the distinction between the nature of control set forth in comment (a) and (c) of Restatement, the court in *DiSalvatore v. United States*,[7] 456 F.Supp. 1079 (E.D.Pa.1978) stated that the retained power discussed in comment (a) "can be characterized as retained power to direct how the work should be done, in distinction to control over the results of the work." *Id.* at 1082. This court further explained that the purpose of comment (c)

"is to insulate one employing an independent contractor from liability when the employer possesses only a general right to insure that the contractor is complying with the terms of the contract, that is, to oversee the results of the work. See *Fisher v. U. S.*, 441 F.2d 1288 (3rd Cir. 1971). In contrast to the right to supervise the results of the work is the right of

control over the *conduct* of the work at the construction site."

*Id.* Thus, where the retained control is tantamount to reservation of the power to direct the manner in which the contractors produce the result, Section 414 is properly invoked. See *Hurst v. Triad Shipping Co.*, 554 F.2d 1237, 1251 (3rd Cir.), cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977).

The plaintiff, Sharkey, and third-party plaintiff, Airco, Inc., primarily rely on four factors as indicia of control to invoke Section 414. These facts are as follows: (1) the contract allows Thomas Jefferson to change the work within the general scope of the contract.[8] (2) Thomas Jefferson set up and maintained an office for its construction representatives across from the job site; (3) these representatives visited the job site at least two or three times a week; (4) the representatives toured the entire job site, including the upper floor of the building under construction.[9] On these factual allegations, the extent of control

---

7. In *DiSalvatore*, supra, plaintiff decedent was an employee of a subcontractor who fell through an uncovered elevator shaft. The failure to cover the shaft violated OSHA standards which were incorporated into the contract. Defendant maintained an engineer on the job site whose duties included resolving factual disputes among the contractors. Plaintiff alleged that the defendant's engineer was negligent in the area of the work where control was retained by the defendant; the resolution of the dispute over who had the responsibility to replace the elevator shaft protection. On a motion for summary judgment by the defendant, the court held that the defendant's reserved power constituted retained control under Section 414. 456 F.Supp. at 1082.

8. See Contract with hospital contractors § 12.-1.1. Furthermore, I note that the general contractor was responsible for the safety precautions and requirements under the contract. Id. at 10.2.2–10.3.1. Inspection rights were specifically retained in the contract with Williard, Inc., the sub-contractor. See Contract with Williard Section 7.

9. The final three factors relied on by the opposing parties are gleaned from the depositions of employees of Williard, Inc. and are accepted as true. *Scott v. Plante*, supra, 532 F.2d at 945. Plaintiff also states that "Thomas Jefferson

was the 'last source of [information concerning proper working conditions] that [they—employees of Williard] would heed to'." An examination of the relevant portion of the deposition, however, reveals that this quotation is totally out of context. The following excerpt indicates a diametrical view.

Q. There was no reason, no real reason for the Jefferson people to be there at that stage?
A. That's right.
Q. While you were supervising that construction in that year, did anyone from Jefferson ever attempt to suggest to you whether, on a given day, the job should go forward or not?
A. No. They didn't have the authority to instruct us one way or another.
Q. About whether to go forward or whether the condition that you were working under was proper?
A. Actually, that would be the last source of such information that we would heed to. Deposition of Theodore Klemick at p. 69. Consequently, this assertion will be disregarded since there is no basis in fact for it in the record before the court. A mere conclusory allegation of control is insufficient to create a genuine factual dispute. *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3rd Cir. 1972).

exercised by Thomas Jefferson is insufficient to impose liability on a property owner under Section 414.[10]

■ The type of control delineated in Comment (c) of the Restatement,[11] the general right to oversee the results of the work, is precisely the degree of control retained and exerted by the defendants, Thomas Jefferson, in the case sub judice. An employer does not retain control of the work by specifying the result and insuring its accomplishment according to the contract terms. See *Dougherty v. Haaland*, 457 F.Supp. 860, 868 (E.D.Pa.), aff'd, 601 F.2d 574, cert. denied, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 421 (1979); *DiSalvatore v. United States*, supra, 456 F.Supp. at 1082. Encompassed within this right of an employer to insure the satisfactory accomplishment of the work is the concomitant right of inspection. Thus, the maintenance of an office and presence of representatives of Thomas Jefferson at the job site, together with frequent inspections of the construction progress, provides no legal inference of control over the manner of work. See *Fisher v. United States*, 441 F.2d 1288, 1291 (3rd Cir. 1971); *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 152–53, 189 A.2d 271, 278 (1963); *Townsend v. City of Pittsburgh*, 383 Pa. 453, 119 A.2d 227 (1956); *Weaver v. Foundation Co.*, 310 Pa. 310, 165

A. 281 (1933). See also, Restatement of Torts, Second, comment (c).[12] Moreover, there is no allegation that the representatives of the defendant issued instructions or exercised control over the manner of work, nor does review of the depositions provide evidence of such control.[13] See *Green v. Independent Oil Co.*, 414 Pa. 477, 484, 201 A.2d 207, 211 (1964). Also refuted by comment (c) of the Restatement is the plaintiff's contention that the contract right, permitting the defendants to order changes in the work within the general scope of the contract, establishes sufficient control under Section 414. Comment (c) provides that "[i]t is not enough he [the employer] has merely a general right to ... prescribe alterations and deviations" in the work. Restatement of Torts, Second, comment (c). See also *Miller v. Merrit & Co.*, 211 Pa. 127, 135, 60 A. 508, 511 (1905). I see no qualitative difference between the right to order changes in the work and the right to order work stopped in terms of imposing Section 414 liability. See *Toole v. United States*, supra, 443 F.Supp. at 1224. Both contract rights seek to preserve the employer's right to control the ultimate work product but the contractor is nevertheless left "entirely free to do the work in his own way."[14] Restatement of Torts, Second, comment (c). Accordingly, summary judgment is granted with respect to the claim under Section 414.

10. In most cases under Section 414 the retention of control is a factual issue properly left to the jury. *Moss v. Swan Oil*, 423 F.Supp. 1280, 1282 (E.D.Pa.1977). But where there is a written contract free from ambiguity, as herein, and the factual allegations of control are insufficient to support liability, the question is properly one for the court. See *Moushey v. U. S. Steel Corp.*, 374 F.2d 561, 568 (3rd Cir. 1967).

11. Comment (c) of the Restatement of Torts, Second, provides:

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a *general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.* Such a general right is usually reserved to employers, but it does

not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such retention of a right of supervision that the contractor is not entirely free to do the work in his own way. (emphasis supplied).

This comment has been adopted in Pennsylvania. See *Toole v. United States*, 443 F.Supp. 1204, 1224, rev. on other grounds, 558 F.2d 403 (3rd Cir. 1978); *Celender v. Allegheny Co.*, supra, 208 Pa.Super. at 395–96, 222 A.2d at 464.

12. See, supra, at n.11.

13. See, supra, at n.9.

14. The additional attributes of control articulated by the courts in *Byrd v. Merwin*, 456 Pa. 516, 317 A.2d 280 (1974) and *Hargrove v. Frommeyer*, 229 Pa.Super. 298, 323 A.2d 300 (1974) are not present in the case at bar.

III. *SECTION 416—PECULIAR RISK DOCTRINE*

 ·The "inherently dangerous activity" or "peculiar risk" doctrine expressed in Sections 416 and 427 of the Restatement of Torts is also an exception to the general rule that one who employs an independent contractor is not liable for the contractor's negligence. *Gibson v. United States*, supra, 567 F.2d at 1244. Unlike Section 414, Section 416 [15] is not grounded in active negligence of the property owner-employer but imposes vicarious liability based on the nature of the task and the dangers inherent in the work unless special precautions are taken. *Jacobini v. IBM*, 57 D.&C.2d 8, *aff'd mem.*, 222 Pa.Super. 750, 254 A.2d 756 (1972). Thus, in Pennsylvania employers may be liable vicariously for the negligence of an independent contractor, irrespective of whether the employer has himself been at fault. *Gibson v. U. S.*, supra, 567 F.2d at 1244; *Toole v. U. S.*, supra, 443 F.Supp. at 407. The requirements for application of Section 416 are (1) the independent contractor must commit an act of negligence which causes the plaintiff's injuries and (2) the work must involve a peculiar risk of harm requiring that special precautions be taken. *Nationwide Mutual Insurance Co. v. Phila-delphia Electric Co.*, 443 F.Supp. 1140, 1145 (E.D.Pa.1977).

Plaintiff and defendant, Airco, Inc., contend that the nature of the plaintiff's construction work in conjunction with the contract deadline and severe winter conditions created a peculiar risk of harm requiring special precautions. Furthermore, they argue that this is a question of fact properly left for the jury to determine. This determination is, however, "a mixed question of law and fact and may, in clear cases, be made by the trial judge as a matter of law." *McDonough v. U.·S. Steel Corp.*, supra, 228 Pa.Super. at 276 n.6, 324 A.2d at 546 n.6. See also, *Brletich v. U. S. Steel Corp.*, 445 Pa. 525, 534, 285 A.2d 133, 137 (1971). The facts of the case sub judice present such a clear case for disposition of the issue as a matter of law.[16]

 Peculiar risk is defined in comment (d) of Section 416 of the Restatement.[17] Adopting comment (b) of Section 413, the court in *Hargrove v. Frommeyer*, supra, 229 Pa.Super. 198, 323 A.2d 300 (1974), stated that "the risks in contemplation are: '. . . peculiar to the work to be done, and arising out of its character . . . arising out of the particular situation creat-

---

**15.** Section 416 of the Restatement of Torts, Second states:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

The Section was specifically adopted as the law of Pennsylvania in *Phila. Electric Co. v. Julian*, 425 Pa. 217, 220, 228 A.2d 669, 671 (1967).

**16.** The affidavit of Paul Brady, attorney for Airco, reciting the substance of his expert's opinion that the conditions at the work site created a peculiar risk of harm, is not in compliance with Fed.R.Civ.P. 56(c); therefore, it will not be considered. *United States v. Bosurgi*, 530 F.2d 1105, 1111–12 (2nd Cir. 1976). The attached letter of the expert is not a sworn statement; thus, it also violates the mandate of Rule 56(c). Furthermore, the court will not exercise its discretion under Fed.R.Civ.P. 6(b)

& (d) and permit introduction of additional expert affidavits since the defendant had more than two months to submit an affidavit which complied with rule 56(c). See *Jones v. Menard*, 559 F.2d 1282, 1285 n.5 (5th Cir. 1977).

**17.** Comment (d) states as follows:

In order for the rule stated in this Section to apply, it is not essential that the work which the contractor is employed to do be in itself an extra-hazardous or abnormally dangerous activity, or that it involve a very high degree of risk to those in the vicinity. It is sufficient that it is likely to involve a peculiar risk of physical harm unless special precautions are taken, even though the risk is not abnormally great. A *'peculiar risk' is a risk different from the common risks to which persons in general are commonly subjected by the ordinary forms of negligence which are usual in the community.* It must involve some special hazard resulting from the nature of the work to be done which calls for special precautions. (emphasis supplied).

Restatement of Torts, Second, § 416 comment (d).

ed . . . a special recognizable danger." Id. at 311, 323 A.2d at 308. The focus is not exclusively on the nature of the work, but the nexus between the work and the alleged negligence is also analyzed to determine the peculiarity of the risks.[18] Limitations on the extent of liability exist, despite the liberal treatment evinced by the Pennsylvania courts in applying Section 416. Ordinarily liability is not imposed vicariously where the risk of harm arises from the casual or ordinary negligence on the part of the contractor or his servants in the performance of the operative details of the work. *McDonough v. U. S. Steel*, supra, 228 Pa.Super. at 275–76, 324 A.2d at 546. See also, *Brletich v. U. S. Steel Corp.*, supra, 445 Pa. at 533, 228 A.2d at 136–37 and *Hargrove v. Frommeyer*, supra, 229 Pa.Super. at 311, 323 A.2d at 308 (citing with approval Restatement of Torts, Second comment (b)).[19] Thus, where ordinary negligence creates a risk of harm which is abnormal to the customary risks associated with the work task, one who employs an independent contractor is not liable. See Prosser, Law of Torts, 475 (4th Ed. 1971).

*Fettig v. Whitman*, 285 N.W.2d 517 (N.D. 1978), illustrates this distinction. In *Fettig*, an independent contractor failed to cover a stairwell opening in the course of constructing a house and the plaintiff, employee, was injured when he fell through. The court described the concept of peculiar risk as follows:

> "[it] does not include the negligence of *the contractor 'in the performance of operative details of the work which ordinarily may be expected to be carried out with proper care*, unless the circumstances under which the work is done give him warning of some special reason to take precautions, or some special risk of harm to others inherent in the work.' Restatement of Torts, 2d § 426, comment (b). For such collateral negligence, only the independent contractor is liable. *Smith v. Inter-County Telephone Co.*, 559 S.W.2d 518 (Mo.1977); *May v. 11½ East 40th Street Co.*, 269 App.Div. 180, 54 N.Y. S.2d 860 (1945), affirmed 296 N.Y. 599, 68 N.E.2d 881."

*Id.* at 522 (emphasis added).

The court reasoned that if it were to hold that under these circumstances a peculiar risk existed, it would be tantamount to holding that any general anticipation of the possibility that the contractor may in some way be negligent would result in vicarious liability contrary to the intention of Section 416. *Id.* Thus, the court stated that the negligence in this case was not a danger

---

**18.** Exemplifying this view are several cases. *See e. g., Nationwide Mutual Insurance Co. v. Philadelphia Electric Co.*, 443 F.Supp. 1140 (E.D.Pa.1977) (working in a crane on a cable which became entangled in overhead power line—peculiar risk when contractor failed to insulate in compliance with National Electric Code); *McDonough v. U. S. Steel*, 228 Pa.Super. 268, 224 A.2d 542 (1974) (Operation of earth moving machine at night—peculiar risk where failure to illuminate area posed visibility problems); *Hargrove v. Frommeyer & Co.*, 229 Pa.Super. 298, 323 A.2d 300 (1974) (Construction of warehouse wall—peculiar risk where design defective in failing to meet industry standards and government regulations); *Jacobini v. IBM*, 57 D.&C.2d 8, aff'd per curiam, 222 Pa.Super. 750, 254 A.2d 756 (1972) (Operation of a hoist at a construction site—peculiar risk where contractor failed to enclose such with wire mesh in violation of state safety regulations); *Thorne v. U. S.*, 479 F.2d 804 (9th Cir. 1973) (peculiar risk found to exist where special precautions of anchoring sides of trench not taken).

**19.** This comment explains the rationale for this distinction. In pertinent part it states:

> It is obvious that an employer of an independent contractor may always anticipate that if the contractor is in any way negligent toward third persons, some harm to such persons may result. . . . *This Section has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work.* Such precautions are the responsibility of the contractor; and if the employer has exercised reasonable care to employ a contractor who is competent and careful . . . he is not required to provide . . . that the contractor shall take them. (emphasis supplied).

arising from the very performance of the work task but was attributable to the manner of the performance. *Id. Accord, Jacobini v. IBM*, supra, 57 D.&C.2d at 11 n.2. ("The distinction ... is between conduct which is not dangerous unless active negligence occurs in the performance of the act, and a dangerous condition inherent in the work which poses a substantial risk of harm unless precautions are taken").

■ Under this mode of analysis which is accepted in Pennsylvania,[20] it is clear that the risk of harm involved herein was not inherent in the nature of the task but arose from the failure of the contractor to take the routine precautions necessary for this general construction procedure. Every type of construction work involves a variety of risks of harm which are viewed by those engaged in the trade as normal incidents of the occupation. But there is no special risk of harm in the performance of many construction processes if customary precautions are observed by the contractor and his employees.

Initially plaintiff was engaged in clearing the work place to provide a path for a loading dolly for use in transferring equipment from an overhead crane. This is general construction work which is performed daily throughout the country regardless of the season. After piling snow in mounds on the rooftop, the plaintiff stepped onto one of the mounds to avoid a dolly being escorted along the cleared path. From this perch, the plaintiff fell. Danger may be said to inhere in such a maneuver in the sense that a modicum of danger is present whenever one steps onto a slippery surface. But I cannot subscribe to the claim that the work in which the plaintiff was engaged presented a peculiar risk of harm simply because a finite contract deadline necessitated that the construction continue through the winter. To so hold would eviscerate the legal concept of independent contractor and de-

tach Section 416 from its intended moorings. From the uncontested facts presented, it is apparent that the contractor's failure to use ordinary care in controlling the work place generated the extraordinary risk of harm. The precautions available to guard against the normal risks of working around icy surfaces are not novel. A single tarpaulin would have provided a safe haven for the plaintiff. In sum, there was no peculiar risk of harm under the circumstances as a matter of law since negligent performance of the operative detail is not within the ambit of that concept.[21]

Accordingly, Summary Judgment is properly granted in favor of the third party defendant, Thomas Jefferson.

---

20. See, supra, at n.19 and accompanying text.

21. I note that some courts narrowly construe the concept of peculiar risk where the injured party is an employee of an independent contractor especially when the injury results from

casual negligence in the performance of the details of the work. *Elder v. Pacific Tel. & Tel. Co.*, 66 Cal.App.3rd 657, 136 Cal.Rptr. 203, 207 (1976).